IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| JEROME W. GRIFFIN, for himself and all others similarly situated,<br>　　　Plaintiffs,<br>vs.<br>Alabama Gas Corporation, an Alabama Corporation,<br>　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

CIVIL ACTION NO. 2:06cv365-DRB

**DEMAND FOR JURY TRIAL**

## COMPLAINT

COMES, **JEROME W. GRIFFIN**, and brings this action for himself and a proposed class and states as follows:

### I
### INTRODUCTION

1. Plaintiff and proposed class members are African-American members of a protected class that suffered through nearly 400 years of slavery. The class suffered an additional 100 years of near slavery in a political and governmental system stringently grounded in racially segregated jobs, justices, public education and even in the Armed Services. That system became an integral part of a coherent racial civilization that openly boasted of its "white supremacy" heritage, economy, geography and culture.

2. During the years in question, one political party completely dominated the landscape in Alabama and the South. That one-party arrangement helped Southern senators and congressmen gain congressional seniority and build ramparts of unprecedented power in the national Congress which they used to the systematic detriment of African-Americans. From 1865 to the 1970s, African-Americans were overrepresented in farm work and as maids and servants. Southern members of Congress used their great political power to exclude farmers and maids from the protection of

modern unions, the minimum wage, regulated hours of work and even Social Security until the 1950s.

3. The negative impact of these strategic exclusions is almost incalculable in 2006. This litigation would be unnecessary except for that history.

## II
## JURISDICTION AND VENUE

1. Jurisdiction is invoked pursuant to Title VII of the Act of Congress known as the *Civil Rights Act of 1964*, as amended in 1991, 42 U.S.C. Section 2000 et. seq. and 42 U.S.C. Section 1981. Also 28 U.S.C. Sections 1331 and 1343. Venue is proper pursuant to 28 U.S.C. Section 1391 (c). Jurisdiction of this Court is invoked to secure protection and redress deprivation of rights secured by Title VII of the *Civil Rights Act*, the Equal Protection Clause and the Due Process Clause of the U.S. Constitution applied through 42 U.S.C. Section 1983 and 42 U.S.C. Section 1981, providing for compensatory and punitive damages.

2. Plaintiff fulfilled all conditions precedent to the institution of this action under Title VII of the *Civil Rights Act*, 42 U.S.C. Section 1983 and 42 U.S.C., Section 1981. Plaintiff has timely filed this charge of racial job discrimination within the last 180 days of the last discriminatory act. This suit is instituted within the ninety (90) day period of Plaintiff's receipt of the right to sue letter received on January 28, 2006. This suit is also filed within two (2) years of the last discriminatory act.

## III
## PARTIES

1. Plaintiff, Jerome W. Griffin, was born on January 27, 1975, is African-American and holds two associate degrees, to wit: an AOT degree in electrical

technology and a minor degree in air conditioning and refrigeration. He has a certificate in electrical technology and an associate degree in science.

2. Plaintiff came to work for the Alabama Gas Corporation in 2000 in construction and later moved up to construction specialist. He is now a corrosion/environmental technician whose work is inspected annually by the Alabama Public Service Commission (APSC), the state agency that regulates the Alabama Gas Corporation. Plaintiff monitors, surveys and corrects deficiencies in corrosion and environmental concerns in the company's pipelines. The APSC enforces federal pipeline regulations and grades Plaintiff's work and 100 is a perfect score. In each of the past two (2) years, Plaintiff has received a perfect 100 score from the APSC.

3. Defendant Alabama Gas Corporation, an Alabama corporation, is the largest natural gas distributor in Alabama, serving an average of 450,000 customers in various towns, cities and communities within the State. The company has more than 1,000 employees who work in the company's seven (7) operating divisions. An operating division is located in Montgomery, Opelika, Selma, Tuscaloosa and in smaller district offices in the surrounding areas. Energen is the holding company and parent of Alabama Gas Corporation and is located in Birmingham, Alabama.

## IV
## CLASS

1. The proposed class consist of African-American employees of the Alabama Gas Corporation who within the last two (2) years were denied job promotions, the opportunity for promotion and salary increases on account of race; regardless of whether such employees are salaried, hourly, union or non-union workers.

## V
## STATEMENT OF FACTS

1. In the fall of 2004, Alabama Gas Corporation, hereafter called company, implemented a so-called "Hogan Assessment Test" as a first component for judging applicants seeking supervisory positions. Since implementation of that subjective personality test, most African- American applicants for supervisory positions have been "screened out" and on that basis. Kelli Leslie, Jennifer Osborn and Donna Collins (all white) were awarded supervisory positions without completing the test.

2. On April 13, 2005, Plaintiff applied to fill a supervisory night shift vacancy in the Birmingham office. Company policy dictated that the top three (3) applicants be interviewed on the basis of skills, experience, appropriate training, attendance and current job experience. Plaintiff was interviewed and directed by Randy Donaldson, Manager of Human Resources, to take the "Hogan Assessment Personality Test." No company policy required Plaintiff to take the test, but Plaintiff passed the test and was then directed by Donaldson to submit to a newly created "structured panel interview." No such interview is mentioned in company policies. On information and belief, white employees who failed that test have nevertheless been promoted to supervisory positions.

3. The structured panel interview was given to Plaintiff and graded by Donaldson and two (2) superintendents, not by psychologists. On May 13, 2005, Donaldson informed Plaintiff he would not be promoted to the supervisory position because Plaintiff did not score high enough on the structured panel interview. On information and belief, Plaintiff alleges that only one (1) person has passed the structured panel interview, and white employees have been promoted to supervisory positions notwithstanding they failed the so-called structured panel interview.

4. On information and belief, Plaintiff alleges the company intentionally placed the vacant supervisory position sought by him on hold for a month and then filled it with a white employee returning from Iraq. Plaintiff is a member of a protected class, was qualified for the position but rejected on a subjective and superficial basis of race.

5. Plaintiff alleges the new tests are by design subjective, superficial and used primarily to screen out minorities. Neither test is mentioned in company policies. Plaintiff alleges the two tests are the reason for a disparity between the percentage of blacks applying for posted supervisory positions and the percentage of blacks actually hired for those positions.

6. Plaintiff alleges the company has deliberately posted some supervisory job vacancies to benefit white employees to the detriment of black employees. Plaintiff alleges the company sometimes posts no notice of some job vacancies and these positions are invariably filled by white employees. Eddie Birdshaw and Mike Gorenflo are two examples of this racially discriminatory policy. Whites are always the beneficiaries of the "no notice" practice, with one notable exception.

7. Plaintiff alleges that several positions were given to unqualified white employees over qualified black employees. Mike Gorenflo obtained a superintendent position with only a high school diploma, had no prior experience and the vacant position was not posted. There was no "irresistible demand, directly fostering safety or efficiency" that ordinarily constitute a "business necessity" for giving that position to an unqualified employee.

8. Plaintiff alleges that black employees must obtain a college degree to equate with non-degreed white employees. The company has made certain that the most

attractive classification of jobs is held by white employees, with token exceptions, and the less attractive classification with token exceptions is held by blacks. As more black employees obtain college degrees, the company persistently finds ways to keep blacks out of the better job classifications. The Manager of Human Resources, Randy Donaldson, admitted that "intangibles, networking and political techniques," are used to obtain a job in the more attractive job classification.

9. Plaintiff alleges the company systematically engages in racially discriminatory policies in the areas of employee benefits, training, development, promotions and compensation. Typically, David Renaud, a white employee technician, was allowed to select his company vehicle directly from a Chevrolet dealer but Plaintiff was ordered to select a vehicle from a brochure and then wait for it to be delivered later. Renaud and Ray Webster, another white technician, each live outside their assigned work location but Plaintiff was forced to relocate on becoming a technician. This discrimination fits a pattern and hinders job development and promotional opportunities for African-Americans in the company.

10. Renaud has the same non-exempt job title and duties as Plaintiff but Renaud receives overtime pay while acting as an exempt professional field supervisor. Plaintiff is arbitrarily denied that benefit and compensation. In 2003, Renaud's annual salary with overtime was much more than Plaintiff's salary and overtime.

WHEREFORE, Plaintiff prays this case be tried before a struck jury, and he and members of the class be awarded compensatory and punitive damages as justified by law.

Respectfully submitted,

_____
JEROME W. GRIFFIN,
PLAINTIFF

_____
J.L. CHESTNUT, JR.,
COUNSEL FOR PLAINTIFF (JCHEST5845)

OF COUNSEL:
J.L. Chestnut, Jr.
CHESTNUT, SANDERS, SANDERS,
PETTAWAY & CAMPBELL, L.L.C.
Post Office Box 1290
Selma, Alabama 36702-1290
(334) 875-9264

Plaintiff demands this cause be tried before a struck jury.

_____
J.L. CHESTNUT, JR. (JCHEST5845)
Counsel for Plaintiff
Post Office Box 1290
Selma, Alabama 36702-1290