IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
MONTGOMERY DIVISION

| | |
|---|---|
| **JEROME W. GRIFFIN**, for himself, and a class of African-American employees of the Alabama Gas Corporation who within the two (2) year statutory time limitation were denied job promotions to non-bargaining unit positions, the opportunity for such promotions, and salary increases on account of race, regardless of whether such employees are salaried, hourly, union or non-union workers, ) ) ) ) ) ) ) ) ) ) ) | **JURY DEMAND**  **Civil Action No.** |
| Plaintiffs, ) ) | |
| v. ) ) | **2:06-CV-0365-MEF** |
| **ALABAMA GAS CORPORATION**, an Alabama Corporation, ) ) ) ) | |
| Defendant. ) ) | |

**FIRST AMENDED COMPLAINT**

Comes, Jerome E. Griffin, and brings this action for himself and the class and states as follows:

**I.   JURISDICTION AND VENUE**

1. Jurisdiction is invoked pursuant to Title VII of the Act of Congress known as the *Civil Rights Act of 1964,* as amended in 1991, 42 U.S.C. § 2000(e) *et seq.*, and 42 U.S.C. § 1981, and also, 28 U.S.C. §§ 1331 and 1343.

2. Venue is proper pursuant to 28 U.S.C. § 1391(c). Jurisdiction of this Court is invoked to secure protection and redress the deprivation of rights secured by Title VII of the *Civil Rights Act,* and 42 U.S.C. § 1981, providing for injunctive relief, compensatory, and punitive damages.

3. Plaintiff fulfilled all conditions precedent to the institution of this action under Title VII of the *Civil Rights Act*, 42 U.S.C. § 2000(e), *et seq.*, and 42 U.S.C. § 1981.

4. Plaintiff has timely filed this charge of racial job discrimination within 180 days of the last discriminatory act. This suit is instituted within the ninety (90) day period of Plaintiff's receipt of the Notice of Right-to-Sue, which was received on January 28, 2006. This suit is also filed within two (2) years of the last discriminatory act.

## II. PARTIES

5. Plaintiff, Jerome W. Griffin, was born on January 27, 1975. He is a citizen of this state and a resident of this district and division.

6. Griffin is also African-American. He holds two associate degrees, to-wit: an Associate of Technology degree in electrical technology and a minor degree in air conditioning and refrigeration. He also earned a certificate in electrical technology and an associate degree in science.

7. Plaintiff came to work for the Alabama Gas Corporation in the year 2000 in the field of construction and later moved up to construction specialist. He is now a corrosion/environmental technician for Alabama Gas Corporation, and his work is inspected annually by the Alabama Public Service Commission (APSC). Plaintiff monitors and surveys pipelines and corrects deficiencies in corrosion and environmental concerns. The APSC enforces federal pipeline regulations and grades the work of environmental technicians in a manner that 100 is a perfect score. Over the past three (3) years, Plaintiff has received a perfect 100 score twice and a 94 score once from the APSC. By all objective measures, Plaintiff has performed his duties and responsibilities in an exemplary manner.

8. Defendant Alabama Gas Corporation, an Alabama corporation, is the largest natural gas distributor in Alabama, serving an average of 450,000 customers in various towns, cities and communities within the State. The Company has more than 1,000 employees who work in the Company's seven (7) operating divisions. An operating division is located in Opelika, Selma, Tuscaloosa and in smaller district offices in the surrounding areas. Energen is the holding company and parent of Alabama Gas Corporation and is located in Birmingham, Alabama.

### III.   CLASS

9. The proposed class consists of African-American employees of the Alabama Gas Corporation who within the last two (2) years were denied job promotions to non-bargaining unit positions, the opportunity for such promotions, and salary increases on account of race, regardless of whether such employees are salaried, hourly, union or non-union workers.

### IV.   STATEMENT OF FACTS

10. In the fall of 2005, Alabama Gas Corporation (hereinafter "Company"), implemented a so-called Hogan Assessment Test as a first component for judging applicants seeking promotion to supervisory positions. Since implementation of that subjective personality test, most African-American applicants for supervisory positions have been "screened out" on that basis. In contrast, Lois Brown, Kelli Leslie, Sharon Davis, Jennifer Osborn and Donna Collins (all white) were awarded supervisory positions without completing this test.

11. On April 13, 2005, Plaintiff applied to fill a supervisory night shift vacancy in the Birmingham office. Company policy dictated that the top three (3) applicants for the position be interviewed on the basis of skills, experience, appropriate training, attendance and current job experience. Plaintiff was interviewed and directed by Randy Donaldson, Manager of Human

3

Resources, to take the Hogan Assessment Personality Test. No Company policy required Plaintiff to take the test, but Plaintiff passed the test and was then directed by Donaldson to submit to a newly created "structured panel interview." No such interview is mentioned in the Company's policies. On information and belief, white employees who failed that test have nevertheless been promoted to supervisory positions.

12. The structured panel interview was given and graded by Donaldson and two (2) superintendents, not by psychologists. On May 13, 2005, Donaldson informed Plaintiff he would not be promoted to the supervisory position because Plaintiff did not score high enough on the structured panel interview. On information and belief, Plaintiff alleges that only one (1) person has ever passed the structured panel interview, and whites have been promoted to supervisory positions notwithstanding the fact that they failed the so-called structured panel interview.

13. On information and belief, Plaintiff alleges that the Company intentionally placed the vacant supervisory position he sought on hold for a month and then filled it with an employee returning from Iraq. Plaintiff is a member of a protected class, was qualified for the position but rejected on a subjective and superficial basis. Ultimately, a white applicant benefited from the decision and the Company's reason justifying the decision is pretextual.

14. Plaintiff alleges that the new tests implemented by the Company are by design and implementation both subjective and superficial and used to screen out minorities. Neither test is mentioned in the Company's policies. Plaintiff alleges that the two tests are the reason for the disparity between the percentage of blacks applying for posted supervisory positions and the percentage of blacks actually hired for those positions.

15. Plaintiff alleges the Company deliberately posts certain job vacancies to benefit white employees to the detriment of black employees. The Company sometimes posts no notice

whatsoever of some job vacancies and such positions are invariably filled by white employees. Eddie Birdshaw and Mike Gorenflo are two examples of this racially discriminatory policy and whites are always beneficiaries of the "no notice" practice, with one notable exception.

16.     Plaintiff alleges that several positions have been given to unqualified white employees. Mike Gorenflo obtained a superintendent position with only a high school diploma, no prior experience and that vacancy was not posted. There was no irresistible demand, directly fostering safety or efficiency that ordinarily constitute a "business necessity" for giving the position to Gorenflo.

17.     Plaintiff alleges that African-American employees must unfairly obtain a college degree to equate with non-degreed white employees. The most attractive classification of jobs is held by white employees, and the less attractive classification of jobs is held by blacks. As more African-American employees obtain college degrees, the Company finds ways to keep blacks out of the better job classifications. The Manager of Human Resources, Randy Donaldson, admitted that "intangibles, networking and political techniques," are used to obtain the more attractive job classification.

18.     Plaintiff alleges that the Company systematically engages in racially discriminatory policies in the areas of employee benefits, training, development, promotions and compensation. For example, David Renaud, a white employee technician, was allowed to select his company vehicle directly from a Chevrolet dealer, while Plaintiff was ordered to select a vehicle from a brochure and the car to be delivered later. Likewise, Renaud and Ray Webster, another white technician, each is permitted to live outside his assigned work location, but Plaintiff was ordered to relocate to his work location on becoming a technician. This

discrimination constitutes a pattern and practice and hinders job development and promotional opportunities for African-Americans.

19. Renaud has the same non-exempt job title and duties as Plaintiff but Renaud receives overtime pay while acting as an exempt professional field supervisor. Plaintiff is discriminatorily denied that benefit and compensation. In 2003, Renaud's annual salary with overtime was much more than Plaintiff's salary and overtime.

### V.   LEGAL CLAIMS

### CLAIM I
### (DISPARATE TREATMENT UNDER TITLE VII AND 42 U.S.C. § 1981)

20. Plaintiff incorporates by reference preceding paragraphs 1 through 19 as if fully set out herein.

21. The actions of the Defendant constitute disparate treatment against the Plaintiff in the terms, conditions, and privileges of employment, including, but not limited to, wages, benefits, training, salary increases, transfers and promotions because of his race, in violation of the *Civil Right act of 1964*, as amended, 42 U.S.C. § 2000(e), *et seq.*, and 42 U.S.C. § 1981; and, Defendant's alleged practices were done with reckless indifference to the Plaintiff's federally protected civil rights.

22. As a proximate result of Defendant's conduct, Plaintiff has suffered, is now suffering, and will continue to suffer material damages and economic losses, including, but not limited to, lost back-pay, benefits, training, transfer and promotional opportunities, as well as mental anguish and emotional distress.

## CLAIM II
### (DISPARATE IMPACT PURSUANT TO TITLE VII)

23. Plaintiff incorporates herein all preceding paragraphs 1 through 19 as if fully set out herein.

24. The Company has instituted the "Hogan Assessment Personality Test" and the "Structured Interview Test," which by design and implementation, are both subjective and superficial and disparately impacts the promotional opportunities of African-American applicants for supervisory positions, in violation of the *Civil Rights Act of 1964,* as amended, 42 U.S.C. § 2000(e), *et seq.* The employment practices set forth above are part of a pattern and practice of discrimination utilized by the Defendant against African-Americans, and such practice constitutes violations of the *Civil Rights Act of 1964,* as amended, 42 U.S.C. § 2000(e), *et seq.*, and the interdictions of that statute against hiring, limiting, classifying or segregating employees on the basis of their race.

25. As a proximate result of these actions, Plaintiff and members of the class he seeks to represent, has suffered, is now suffering and will continue to suffer loss pay, interest on such amounts, and promotional opportunities unless and until this Court grants the relief as herein prayed for.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays this case be tried before a struck jury, and that he and members of the class be awarded the following:

1. Rule that this matter is properly maintained as a class action;

2. Issue a judgment declaring that the Defendant violated the rights afforded the Plaintiff and the members of the class he seeks to represent, pursuant to Title VII of the *Civil Rights Act of 1964,* as amended by the *Civil Rights Act of 1991*, and 42 U.S.C. § 2000(e), *et seq.*

7

3. Award Plaintiff, and the members of the class he seeks to represent, compensatory damages for economic injuries and losses actually suffered as a result of the Defendant's violations of federal law; and

4. Award Plaintiff, and the members of the class he seeks to represent, to the extent permitted by law, back-pay and interest on such amount suffered as a result of Defendant's use of a selection method that disparately impacts African-American employees;

5. Enter a judgment, to the extent permitted by law, against the Defendant for such punitive damages as will properly punish the Defendant for the illegal employment practices as alleged herein and in an amount that will serve as a deterrent for the illegal employment practices as alleged herein and in an amount that will serve as a deterrent to the Defendant and others from engaging in similar conduct in the future;

6. Award the Plaintiff, and the members of the class he seeks to represent, reasonable attorney's fees and cost of this action as provided for under Title VII of the *Civil Rights Act of 1964*, 42 U.S.C. 2000(e), as amended, and 42 U.S.C. § 1983;

7. Issue a permanent injunction:

    a. Requiring Defendant to abolish race discrimination throughout its organization, including all departments and branches, by means of a plan by giving preference to members of the class identified herein in promotion, and other terms and conditions of employment, until such time as the Court determines that all vestiges of discrimination against African-Americans have been abolished and eradicated;

    b. Requiring Defendant to accord African-Americans salaries, merit increases, responsibilities, and assignments commensurate with their positions;

    c. Requiring Defendant to refrain from using subjective selection criteria for hiring, promotion, and assigning employees that have an adverse impact on African-Americans and which are not validated pursuant to 29 C.F.R. 1607;

    d. Requiring Defendant to institute training programs in the management, administrative and professional areas which are designed to compensate for the lost training opportunities and experience which Plaintiff and class members would have acquired had they earlier been assigned to positions predominately held by whites, and to give newly promoted African-Americans the background they will need to compete effectively with whites now occupying such positions;

    e. Requiring Defendant to prepare and publish descriptions and titles for all job positions, specifying for each the criteria for hiring and placement, the salary and the responsibilities for the job;

    f. Requiring Defendant to reevaluate and upgrade jobs totally or primarily held by white employees;

  Plaintiff avers that as a direct and/or proximate result of the Defendant's violation of Plaintiff's federally protected rights, Plaintiff lost employment wages, benefits, and other accrued emoluments of employment, for which he is entitled to an award of monetary damages for lost wages, benefits, consequential, and liquidated damages against the Defendant; and, the Plaintiff further avers that he is entitled to instatement of his employment and/or front pay from the Defendant for the denial of positions to which he is otherwise qualified.

  8. Award the Plaintiff, and the members of the class he seeks to represent, such other and further relief as the Court deems necessary and proper.

                                            Respectfully submitted,

                                            /s/ Andrew C. Allen
                                            **Andrew C. Allen**

OF COUNSEL:
**Joe R. Whatley, Jr.**
**WHATLEY DRAKE & KALLAS, LLC**
2323 2nd Avenue North (35203)
Post Office Box 10647
Birmingham, Alabama 35202-0647
Telephone: (205) 328-9576
Facsimile: (205) 328-9669

**J.L. Chestnut, Jr.**
**CHESTNUT, SANDERS, SANDERS PETTAWAY & CAMPBELL, PC**
Post Office Box 1290
Selma, Alabama 36702-1290
Telephone: (334) 875-9264
Facsimile: (334) 875-9853

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this the 1st day of September, 2006, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Abdul K. Kallon
James Walker May, Jr.
BRADLEY ARANT ROSE & WHITE, LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama 35203-2104
Email: akallon@bradleyarant.com
jmay@bradleyarant.com
Telephone: (205) 521-8294
Facsimile: (205) 488-6294

and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants: **Not Applicable.**

                                            /s/ Andrew C. Allen
                                            OF COUNSEL