IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JEROME W. GRIFFIN, for himself and all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. |
| v. | ) ) | 2:06-CV-0365-DRB |
| ALABAMA GAS CORPORATION, | ) ) ) | |
| Defendants. | ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION**

Comes now the Plaintiff in the above-styled cause, and submits this Memorandum in Support of Plaintiff's Motion for Class Certification.

**INTRODUCTION**

Pursuant to *Fed.R.Civ.P.* Rule 23(a) and *Fed.R.Civ.P.* Rule 23(b)(2), on his own behalf and on behalf of all other persons similarly situated, plaintiff hereby moves for entry of an order granting class certification of a plaintiff class in this case. Certification of a class here is appropriate to (1) provide class-wide relief resulting from Alabama Gas Corporation's ("AGC" or "AGC's") wrongful conduct, (2) permit resolution in a single forum of the core legal and factual issues which provide the basis for class members' claims, and (3) prevent any duplicative litigation involving the same facts, documents, and claims regarding AGC's wrongful conduct.

Plaintiff seeks certification of a class under Rule 23(b)(2) consisting only of the following persons:

> The proposed class consists of African-American employees of the Alabama Gas Corporation who within the last two (2) years were denied job promotions to non-bargaining unit positions, the opportunity for such promotions, and salary

increases on account of race, regardless of whether such employees are salaried, hourly, union or non-union workers, as a result of the "Hogan Assessment Test" or the "Structured Panel Interview."

Certification here meets the prerequisites of and advances the principles underlying *Fed.R.Civ.P.* Rule 23. The members of the class are in excess of the numerosity requirement for a class action, and one common issue, the discrimination against African-Americans as a class by denying to them because of their race the terms, conditions, and privileges of employment granted to similarly or less qualified Caucasian employees, demonstrates that AGC has acted or refused to act on grounds generally applicable to the class thereby making appropriate declaratory and injunctive relief. The class representative is typical and adequate.

## STATEMENT OF CORE FACTS

Plaintiff's and the class's claims are alleged to arise out of AGC's pattern and practice of discrimination against African-American employees by utilizing the "Hogan Assessment test" and the "Structured Interview test" to deny to them on the basis of their race the wages, benefits, and promotions that AGC gave to similarly qualified or less qualified Caucasian employees.

### A.     Plaintiff's Class Allegations[1]

In addition to unfairly treating Mr. Griffin, Plaintiff alleges that AGC has discriminated against its African-American employees generally. (Amended Complaint, ¶ 9, p. 3). AGC has treated its African-American employees unequally by placing a higher proportion of Caucasian employees than African-American employees in executive, managerial, technical, and professional positions. (*Id.* ¶ 10, p. 3). AGC has relegated African-Americans

---

[1] As the Supreme Court of the United States has long held, "We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action. Indeed, such a procedure contravenes the Rule...." *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177, 94 S. Ct. 2140, 2152 (1974).

disproportionately to jobs with less responsibility, pay, prestige, and prospects for promotion than the jobs held by similarly qualified Caucasian employees. (*Id.* ¶ 11, pp. 3-4). AGC has failed to give African-Americans the rank, title, and recognition commensurate with their duties and responsibilities. (*Id.* ¶ 18). AGC has hired Caucasian employees at higher salaries and into jobs with better opportunities for promotion than the salaries and jobs it has given to its African-American employees. (*Id.* ¶ 16). AGC has channeled Caucasians but not African-Americans into supervisory positions regardless of qualifications. (*Id.* ¶¶ 13-15). AGC has paid higher salaries to Caucasians than to equally qualified African-Americans in comparable jobs. (*Id.* ¶ 18). AGC has maintained lower pay scales for jobs predominantly held by African-Americans than for jobs predominantly held by Caucasians that are comparable and require an equal level of responsibility and work production. (*Id.* ¶¶ 10-18, 21, 24). AGC has assigned work normally assigned to higher job classifications to African-Americans, without assigning them the salary or rank associated with the work. AGC has paid African-American employees fewer and lower merit raises and raises for promotion than it has paid Caucasian employees. (*Id.*) AGC has not maintained a hiring, promotion, and transfer policy based on objective job-related criteria that are uniformly applied to Caucasians and African-Americans. (*Id.*) AGC has filled job openings through word-of-mouth recruitment, which unfairly restricts the hiring, promotion, and transfer of qualified African-Americans. (*Id.*) In fact, AGC has deliberately posted some supervisory job vacancies to benefit Caucasian employees to the detriment of African-American employees. Sometimes no notice is posted and job vacancies and positions are invariably filled by Caucasian employees. (*Id.*)

B.  **The Core Facts Relating to Plaintiff**

Plaintiff came to work for AGC in the year 2000 in the field of construction and later moved up to construction specialist. (*Id.* ¶ 7, p. 2) He is now a corrosion/environmental technician for Alabama Gas Corporation, and his work is inspected annually by the Alabama Public Service Commission (APSC). (*Id.*) Plaintiff monitors and surveys pipelines and corrects deficiencies in corrosion and environmental concerns. (*Id.*) The APSC enforces federal pipeline regulations and grades the work of environmental technicians in a manner that 100 is a perfect score. (*Id.*) Over the past three (3) years, Plaintiff has received a perfect 100 score twice and a 94 score once from the APSC. (*Id.*) By all objective measures, Plaintiff has performed his duties and responsibilities in an exemplary manner. (*Id.*)

C.  **The Core Facts Relating to Class Certification**

AGC, its divisions and subdivisions, are fully and completely interrelated. AGC's personnel function is likewise fully integrated with its divisions and subdivisions and relies upon a subjective decision-making process. AGC provides through a centralized personnel function the human resources responsibility for all AGC employees, including all divisions and subdivisions.

In the fall of 2005, AGC implemented a so-called Hogan Assessment Test as a first component for judging applicants seeking promotion to supervisory positions. (*Id.* ¶ 10, p. 2) Since implementation of that subjective personality test, most African-American applicants for supervisory positions have been "screened out" on that basis. (*Id.*) In contrast, Lois Brown, Kelli Leslie, Sharon Davis, Jennifer Osborn and Donna Collins (all white) were awarded supervisory positions without completing this test. (*Id.*)

On April 13, 2005, Plaintiff applied to fill a supervisory night shift vacancy in the

4

Birmingham office. AGC's policy dictated that the top three (3) applicants for the position be interviewed on the basis of skills, experience, appropriate training, attendance and current job experience. (*Id.* ¶ 11, pp. 3-4) Plaintiff was interviewed and directed by Randy Donaldson, Manager of Human Resources, to take the Hogan Assessment Personality Test. (*Id.*) No company policy required Plaintiff to take the test, but Plaintiff passed the test and was then directed by Donaldson to submit to a newly created "structured panel interview." (*Id.*) No such interview is mentioned in AGC's policies. (*Id.*) On information and belief, white employees who failed that test have nevertheless been promoted to supervisory positions. (*Id.*)

The structured panel interview was given and graded by Donaldson and two (2) superintendents, not by psychologists. (*Id.* ¶ 12, p. 4) On May 13, 2005, Donaldson informed Plaintiff he would not be promoted to the supervisory position because Plaintiff did not score high enough on the structured panel interview. (*Id.*) On information and belief, Plaintiff alleges that only one (1) person has ever passed the structured panel interview, and whites have been promoted to supervisory positions notwithstanding the fact that they failed the so-called structured panel interview. (*Id.*)

On information and belief, Plaintiff alleges that AGC intentionally placed the vacant supervisory position he sought on hold for a month and then filled it with an employee returning from Iraq. (*Id.* ¶ 13, p. 4) Plaintiff is a member of a protected class, was qualified for the position but rejected on a subjective and superficial basis. (*Id.*) Ultimately, a white applicant benefited from the decision and AGC's reason justifying the decision is pretextual. (*Id.*)

Plaintiff alleges that the new tests implemented by AGC are by design and implementation both subjective and superficial and used to screen out minorities. (*Id.* ¶ 14, p. 4) Neither test is mentioned in AGC's policies. (*Id.*) Plaintiff alleges that the two tests are the

5

reason for the disparity between the percentage of blacks applying for posted supervisory positions and the percentage of blacks actually hired for those positions. (*Id.*)

Plaintiff alleges AGC deliberately posts certain job vacancies to benefit white employees to the detriment of black employees. (*Id.* ¶ 15, pp. 4-5) AGC sometimes posts no notice whatsoever of some job vacancies and such positions are invariably filled by white employees. (*Id.*) Eddie Birdshaw and Mike Gorenflo are two examples of this racially discriminatory policy and whites are always beneficiaries of the "no notice" practice, with one notable exception. (*Id.*)

Plaintiff alleges that several positions have been given to unqualified white employees. Mike Gorenflo obtained a superintendent position with only a high school diploma, no prior experience and that vacancy was not posted. (*Id.* ¶ 16, p. 5) There was no irresistible demand, directly fostering safety or efficiency that ordinarily constitute a "business necessity" for giving the position to Gorenflo. (*Id.*)

Plaintiff alleges that African-American employees must unfairly obtain a college degree to equate with non-degreed white employees. (*Id.* ¶ 17, p. 5) The most attractive classification of jobs is held by white employees, and the less attractive classification of jobs is held by blacks. (*Id.*) As more African-American employees obtain college degrees, AGC finds ways to keep blacks out of the better job classifications, including by use of the Hogan assessment test and the structured interview test. (*Id.*) The Manager of Human Resources, Randy Donaldson, admitted that "intangibles, networking and political techniques," are used to obtain the more attractive job classification. (*Id.*)

Finally, Plaintiff alleges that AGC systematically engages in racially discriminatory policies in the areas of employee benefits, training, development, promotions and compensation. (*Id.* ¶ 18, p. 5)

6

**SUMMARY OF THE ARGUMENT**

"A class action may be maintained only when it satisfies all the requirements of the *Federal Rule of Civil Procedure* 23(a) and at least one of the alternative requirements of Rule 23(b)." *Jackson v. Motel 6 Multipurpose, Inc.,* 130 F.3d 999, 1005 (11th Cir. 1997). This action and the proposed class satisfy the requirements of both Rule 23(a) and (b). The class size, numbering in excess of 40, meets the numerosity requirement. The common factual and legal issues surrounding AGC's discriminatory use of the Hogan assessment and structured interview tests and the adverse impact those tests have upon African-Americans satisfy the commonality requirement. The representative Plaintiff's claims are typical of class members' claims. Finally, the representative Plaintiff is an adequate representative of the class because he has no conflicts of interest with class members and has retained competent, experienced counsel. This action also meets the requirements of Rule 23(b)(2). AGC has acted or refused to act on grounds generally applicable to the class, making injunctive or declaratory relief appropriate, and the back-pay award which Plaintiff seeks is equitable restitution that is ancillary to the injunctive relief and flows naturally from the injunction. Accordingly, this Court should certify this lawsuit as a class action under *Fed.R.Civ.P.* 23(b)(2).

**ARGUMENT**

    A.    ***Purposes and Policies of Rule 23***

The modern class action has its roots in Chancery Courts, which used the class action to promote judicial economy by allowing a single judgment to determine the rights of a class that was too large for all of its members to be joined individually. "The class suit was an invention of equity to enable it to proceed to a decree in suits where the number of those interested in the subject of the litigation is so great that their joinder as parties in conformity to the usual rules of

procedure is impracticable." *Hansberry v. Lee,* 311 U.S. 32, 41, 61 S. Ct. 115, 118 (1940). In addition to considerations of judicial efficiency, courts have maintained class actions as a device to protect the interests of the parties. "The justifications that led to the development of the class action include the protection of the defendant from inconsistent obligations, the protection of the interests of the absentees, the provision of a convenient and economical means for disposing of similar lawsuits, and the facilitation of spreading of litigation costs among numerous litigants with similar claims." *United States Parole Comm'n v. Geraghty,* 100 S. Ct. 1202, 1212, 445 U.S. 388, 402-403 (1980). In commentary about the 1966 revision of class action rules, District Judge Marvin Frankel described the purpose of both the old class action rules, which had grown out of the equitable class action, and the newly revised Rule 23: "Underlying those familiar concepts are familiar notions of necessity or convenience and 'practicability' weighed with or against basic principles of fairness. Such notions are flexible and adaptable to the emerging needs of an increasingly complex community." Marvin E. Frankel, *Some Preliminary Observations Concerning Civil Rule 23*, 43 F.R.D. 39, 46 (1967). Moreover, class actions under Rule 23(b)(2) are intended as a remedy specifically for unlawful discrimination. *Fed.R.Civ.P.* 23(b)(2) advisory committee's note.

An important purpose of Rule 23 is to achieve expeditious and economic multiparty litigation. Maintenance of a class action should "advance 'the efficiency and economy of litigation which is a principal purpose of the procedure.'" *General Tel. Co. of the Southwest v. Falcon,* 102 S. Ct. 2364, 2371, 457 U.S. 147, 159 (1982).

Rule 23 should be construed in light of its underlying purpose. *See Andrews v. American Tel. & Tel. Co.,* 95 F.3d 1014, 1025 (11th Cir. 1996). This case, which seeks injunctive relief and equitable restitution, is appropriate for class certification because it meets the procedural

requirements of Rule 23, and because the policies behind Rule 23 encourage certification. The Plaintiff Class seeks an injunction, which is the historical origin of the class action. Adjudication of the all Plaintiff's claims would promote judicial efficiency by resolving all claims in one action. A single class action will protect AGC from possible inconsistent judgments involving members of the Plaintiff Class, and a class action will protect the interests of absent class members by ensuring that the representative Plaintiff adequately represents absent class members. Finally, class certification will provide access to judicial relief for claimants who might otherwise be unable to bear the expenses of litigation.

### B.   *This Action Satisfies the Requirements of Rule 23(a)*

Rule 23(a) contains four requirements for maintenance of a class action. First, the class must be so numerous as to preclude joinder. Second, the action must involve common questions of law or fact. Third, the claims or defenses of the proposed representatives must be typical of the claims or defenses of the proposed class. Fourth, the named parties must be capable of adequate representation of the absent class members. *Fed.R.Civ.P.* 23(a). This action meets all four requirements of *Fed.R.Civ.P.* 23(a) and should therefore be certified as a class action.

#### 1.   **The Class is Numerous and Joinder is Impracticable**

The first requirement of Rule 23(a) for maintaining a class action is that the class be so large that joinder is impracticable. In order to meet the Rule 23(a) numerosity requirement, however, a party does not need to calculate precisely the number of class members. The Third Circuit has affirmed that "no geographical or numerical limit [is] expressed by Rule 23(a)(1) itself, nor is it necessary that the class representatives have precise knowledge of the exact number of members for determining that joinder is impracticable. It suffices that it be readily apparent . . . that the size of the class makes joinder impracticable." *In re Asbestos School*

*Litigation,* 104 F.R.D. 422, 428 (E.D. Pa. 1984), *aff'd in relevant part and rev'd in part,* 789 F.2d 996 (3d Cir.), *cert. denied sub nom. Celotex Corp. v. School Dist. of Lancaster,* 479 U.S. 852, *cert. denied sub nom. National Gypsum Co. v. School Dist. of Lancaster,* (1986)(citations omitted). As a practical matter, a class of more than 40 meets the numerosity requirement. *Cox v. American Cast Iron Pipe Co.,* 784 F.2d 1546, 1553 (11th Cir.). An exact number is not necessary, however, and numerosity can be shown by evidence or a reasonable estimate of class numbers. *Anderson v. Bank of the South, N.A.,* 118 F.R.D. 136, 145 (M.D. Fla. 1987). In this case, the number of class members will probably far exceed 40. In fact, AGC has more than 1,000 employees who work in the company's seven (7) operating divisions. (*Id.* ¶ 8, p. 3) An operating division is located in Montgomery, Opelika, Selma, Tuscaloosa, and in smaller district offices in surrounding areas. (*Id.*) Energen is the holding company and parent of AGC and is located in Birmingham, Alabama. (*Id.*)

Considering former employees and employees at facilities other than Birmingham, the plaintiff class will far exceed 40 in number. The nature of this suit makes individual suits undesirable due to the danger of inconsistent results. *See Baylor v. HUD*, 913 F.2d 223, 225 (5th Cir. 1990) (acknowledging the fact that one of the primary purposes of the class action format is preventing piecemeal litigation. Even though African-American employees are a discrete and known class which may be ascertained from AGC's employment records, these employees are located at various AGC subsidiaries and divisions throughout the state. Thus, joinder of all class members is impracticable. This reasonable estimate of more than 40 potential class members is sufficient to satisfy the Rule 23(a) numerosity requirement.

### 2. Common Issues of Fact or Law Exist

"The threshold of commonality is not high for class certification under Rule 23(a). *Morris v. Transouth Fin. Corp.*, 175 F.R.D. 694, 697 (M.D. Ala. 1997). The commonality requirement of Rule 23(a) may be satisfied even if there are factual discrepancies and even if there are individual differences as to damages, *Taylor v. Flagstar Bank*, 181 F.R.D. 509, 516 (M.D. Ala. 1998). *See also Groover v. Michelin North America, Inc.*, 187 F.R.D. 662 (M.D. Ala. 1999). Common questions of fact and law are present in this case because the class representative's and all class members' claims arise out of the same practice: AGC's centralized, subjective personnel practice of using the Hogan assessment and structured interview tests to adversely impact African-American employees' opportunities for promotions, wage and benefit increases, and other emoluments of employment. Rule 23(a) requires only that common questions exist, not that they predominate: "there are questions of law or fact common to the class." *Fed.R.Civ.P.* 23(a)(2). Differences that may exist among class members as to damages do not preclude class certification. *Taylor*, 181 F.R.D. at 516. Furthermore, because the Plaintiff seeks predominantly injunctive relief in this case, differences as to damages do not preclude class certification.

### 3. The Class Representative's Claims are Typical

In addition to commonality, Rule 23(a) requires that the class representative's claims be typical of the class members' claims. "To establish typicality, there must be a nexus between the class representative's claims or defenses and the common questions of fact or law which unite the class." *Groover v. Michelin North America, Inc.*, 187 F.R.D. 662, 668 (M.D. Ala. 1999)(citing *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332 (11th Cir. 1984). This connection between class representative's claims and a common question "is established if the

claims or defenses of the class and the class representatives arise from the same event or pattern or practice and are based on the same legal theory." 187 F.R.D. at 668. This case meets the typicality requirement because Jerome W. Griffin's claims arise from the same practice (AGC's centralized subjective employment practices, which utilize the Hogan assessment and structured interview tests to adversely impact African-American employees' opportunities on the basis of race) and are based on the same legal theories (violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C § 2000(e) et seq.,) as the claims of all class members. "As with commonality, differences in damages are not enough to deny typicality." 187 F.R.D. at 668 (citing *Kornberg*, 741 F.2d at 1337).

### 4. The Class Representative is Adequate

The adequacy of representation required by Rule 23(a) turns on whether the class representative has conflicts of interest with the class members and whether the class representative has retained competent counsel. *Griffin v. Carlin*, 755 F.2d 1516, 1533 (11th Cir. 1985). In this case, the class representative has no conflict of interest with class members. Jerome W. Griffin has been deprived of his rights by AGC's pattern and practice of race discrimination. As a remedy, he seeks an injunction requiring AGC to cease its policy of race discrimination. Mr. Griffin seeks, incidental to that injunctive relief, equitable restitution in the form of back-pay and front-pay, for himself and all other class members. Mr. Griffin does not seek compensatory or punitive damages on behalf of the class, so manageability issues relating to the damage claims do not predominate over class issues. *See Allison v. Citgo Petroleum Corp*, 151 F.3d 402 (5th Cir 1998). Likewise, Griffin's decision not to seek compensatory and punitive damages will not create conflicts of interest within the class, because those persons seeking additional damages can do so by pursuing their claims individually. *Cooper v. Federal Reserve*

*Bank of Richmond*, 467 U.S. 867, 104 S.Ct 2794, 81 L.Ed.2d 718 (1984)(*res judicata* did not serve to bar a putative class member from subsequently proving individual acts of discrimination); *c.f. Zachery v. Texeco Exploration and Production,Inc.*, 185 F.R.D. 230, 242-4 (W.D. Tex. 1999).

Even if the Court were to find that Griffin's decision to seek equitable relief on behalf of the class could conceivably create a conflict affecting his adequacy as class representative, the Court can remedy this conflict and protect the due process rights of putative class members by providing class members notice and the opportunity to opt out. The court in *Allison* addressed this precise issue:

> The plaintiffs are apprehensive that such a holding will preclude (6)(2) class actions in civil rights cases. They suggest that class representatives may no longer be adequate under 23(a)(4) because they would not be able to seek for the class the full (monetary) recovery otherwise available to its members on an individual basis. In the first place, we are not certain that an adequacy of representation problem would exist under these circumstances. But, even if it would, this concern might well be addressed, it seems to us, though the notice and opt-out mechanisms under Rule 23(d), see e.q. *Penson*, 634 F.2d at 994; *Eubanks*, 110 F.3d at 93, 96, provided the other criteria for class certification have been met. Those members of the putative class who ultimately did not wish to participate in the class action could simply opt out. Indeed, we have long-required notice in (b)(2) class actions in which equitable monetary claims are at stake. *See Johnson*, 598 F.2d at 438. By providing (b)(2) class members with the procedural guards of notice and opt-out, the district court can permit civil rights class actions to proceed under 23(b)(2) without requiring of 23(b)(3), yet still ensure that the class representatives adequately represent the interests of the unnamed class members.

*Allison*, at 418 fn. 13.

Mr. Griffin has an injury common to all members of the class, and the remedies he seeks will benefit all members of the class. In this case, Mr. Griffin's interests coincide with the class's interests, ensuring that there will be no conflict and that the class representative will adequately represent the class.

In addition to having no conflict with class members, Mr. Griffin has retained competent and qualified counsel. Joe R. Whatley, Jr. and Andrew C. Allen are partners in the firm of Whatley Drake & Kallas, L.L.C. The firm of Whatley Drake & Kallas, L.L.C., and in particular, Whatley and Allen, have served as class counsel in literally hundreds of class actions, including employment class actions. Moreover, the firm, Mr. Whatley and Mr. Allen all enjoy "AV" ratings by Martindale-Hubbell Law Directory. Similarly, Plaintiff's co-counsel, J. L. Chestnut, Jr. and his firm Chestnut, Sanders, Sanders, Pettaway & Campbell, P.C. also enjoy Martindale Hubbell's highest rating. Mr. Chestnut has a long and distinguished career as a civil rights attorney, including litigating class action cases and claims of employment discrimination. Accordingly, Plaintiff's counsel are qualified attorneys who are "generally able to conduct the proposed litigation." 755 F.2d at 1533. The proposed class representative will adequately represent the class members because he has no conflict with the class and has retained qualified, experienced counsel.

  **C.**  ***This Actions Satisfies the Requirements of Rule 23(b)(2)***

    **1.**  **The Defendant Has Acted or Refused to Act Generally Toward the Class Making Injunctive and Declaratory Relief Appropriate**

The conduct at the heart of this action is AGC's pattern and practice of unlawful discrimination in employment on the basis of race, specifically by utilizing the Hogan Assessment and structured interview tests to adversly impact African-Americans applicants for first-line supervisory positions. By denying African-Americans opportunities for promotion and depriving them the wages and benefits of employment that it grants to similarly or less qualified Caucasians, AGC has harmed and will continue to harm the entire class of African-Americans who are or were or will be employed by AGC. This group of African-Americans who are being denied opportunities and deprived of wages and benefits by AGC's unlawful discrimination is

the class whom Jerome W. Griffin seeks to represent, and it is toward this class as a whole that AGC has acted or refused to act. Injunctive and declaratory relief are appropriate in this case because AGC's unlawful discrimination affects the class as a whole. An injunction from this Court will provide the necessary relief, and so this action should be certified as a class action under Rule 23(b)(2).

### 2. Back-Pay Award Is Equitable Restitution Ancillary to Injunctive Relief

Rule 23(b)(2) allows for a class action when injunctive relief is proper. Although Rule 23(b)(2) is not appropriate when the plaintiff primarily seeks monetary damages, 23(b)(2) class certification is appropriate when money damages are ancillary to injunctive relief, that is when they "flow directly from liability to the class." *Hoffman v. Honda of America Mfg., Inc.*, 191 F.R.D. 530, 533 (S.D. Ohio 1999). Back-pay awards have long been recognized as appropriate remedies in 23(b)(2) class actions: "this court has definitively held that as award of back pay is not inconsistent with the maintenance of a Rule 23(b)(2) class action." *Bolton v. Murray Envelope Corp.*, 553 F.2d 881, 885 (5th Cir. 1977)(*citing Pettway v. American Cast Iron Pipe Co.*, 494 F.2d 211, 256-58 (5th Cir. 1974)); *see also Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1552 (11th Cir. 1986); *Scott v. City of Anniston*, 682 F.2d 1353, 1358 (11th Cir. 1982). In cases where back-pay is sought in conjunction with a Rule 23(b)(2) class action, courts have characterized the award as equitable restitution available under the court's equity jurisdiction. *See Curtis v. Loether*, 415 U.S. 189, 197, 94 S. Ct. 1005, 1010 (1974).

In a Rule 23(b)(2) class action that seeks back-pay awards, the amount of each class member's award can be computed mathematically once liability is established, avoiding problems with individual issues as to damages. *See Reynolds v. Alabama Dept. of Transportation*, 996 F. Supp. 1156, 1201 (M.D. Ala. 1998)(approving statistical formula for

calculation of back pay awards in employment discrimination class action). In this case, back-pay awards to the class as a whole are appropriate once class-wide liability is established, and such awards are consistent with Rule 23(b)(2) class actions. Because back-pay awards are an equitable remedy that flows directly from class-wide discrimination, certification under Rule 23(b)(2) is appropriate in this case.

### 3. The Court Should Resolve Doubts in Favor of Certification

Even if there are doubts about class certification, the class should be certified because Rule 23(c) allows for decertification. "Doubts regarding the propriety of class certification should be resolved in favor of certification." *Groover*, 187 F.R.D. at 670 (*citing Buford v. H & R Block, Inc.*, 168 F.R.D. 340, 346 (S.D. Ga. 1996), *aff'd* 117 F.3d 1433 (11th Cir. 1997)). This action and the proposed class meet all the requirements of Rules 23(a) and 23(b)(2), but even if there were some doubt about the propriety of class certification, the class should be certified because "the flexibility afforded by conditional certification 'enhances the usefulness of the class action device' so as to ensure the trial court that 'actual, not presumed, conformity with Rule 23(a)' exists." *Groover*, 187 F.R.D. at 670 (*citing General Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 160, 102 S. Ct. 2364, 2372, 72 L. Ed. 2d 740 (1982)).

### CONCLUSION

This action meets all the requirements for class certification set out in *Fed.R.Civ.P.* Rule 23(a). The class of African-American employees or former employees of AGC who have been, are being, or will be unlawfully discriminated against on the basis of their race by use of the Hogan assessment and structured interview tests is so large that joinder of all class members is impracticable. The common questions of law and fact in this case are whether the Defendant's centralized, subjective personnel policies, and its specific use of the Hogan assessment and

structured interview tests, adversely impact African-American employees' opportunities for promotions, increased wages and benefits, and other emoluments of employment on the basis of race. The class representative's claims in this case are typical of the class because the class representatives' claims arise from the same pattern of conduct and are based on the same legal theories as all class members' claims. The representative Plaintiff will fairly and adequately represent the interests of the class because his interests do not conflict with those of the class and because he has retained competent and experienced counsel. Plaintiffs' attorneys are qualified and generally able, with extensive experience in civil rights and complex class action litigation.

This action also meets the requirements of *Fed.R.Civ.P.* 23(b)(2). The Defendant has acted or refused to act on grounds generally applicable to the class, and injunctive relief is appropriate to the class as a whole. Moreover, any doubts about class certification should be resolved in favor of certification.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff moves this Court to certify this litigation as a class action pursuant to *Fed.R.Civ.P.* Rule 23(a) and Rule 23(b)(2).

Respectfully submitted,

/s/ Andrew C. Allen
ANDREW C. ALLEN

**OF COUNSEL:**
Joe R. Whatley, Jr.
WHATLEY DRAKE & KALLAS, LLC
2323 2nd Avenue North (35203)
Post Office Box 10647
Birmingham, Alabama 35202-0647
Telephone: (205) 328-9576
Facsimile: (205) 328-9669

J.L. Chestnut, Jr.
CHESTNUT, SANDERS, SANDERS
PETTAWAY & CAMPBELL, PC
Post Office Box 1290
Selma, Alabama 36702-1290
Telephone: (334) 875-9264
Facsimile: (334) 875-9853

## CERTIFICATE OF SERVICE

I hereby certify that on this the 15th day of September, 2006, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Abdul K. Kallon
James Walker May, Jr.
BRADLEY ARANT ROSE & WHITE, LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama 35203-2104
Email: akallon@bradleyarant.com
jmay@bradleyarant.com
Telephone: (205) 521-8294
Facsimile: (205) 488-6294

/s/ Andrew C. Allen
OF COUNSEL