## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## MONTGOMERY DIVISION

| | | |
|---|---|---|
| **JEROME W. GRIFFIN, for**<br>**himself and all others similarly**<br>**situated,** | ) ) ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION NO.** |
| **v.** | ) | **2:06-cv-365-MEF** |
| | ) | |
| **ALABAMA GAS**<br>**CORPORATION,** | ) ) | |
| | ) | |
| **Defendant.** | ) | |

### DEFENDANT'S MEMORANDUM IN OPPOSITION TO
### PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Defendant Alabama Gas Corporation ("Alabama Gas") hereby files this
memorandum in opposition to Plaintiff Jerome Griffin's ("Griffin") Motion for
Class Certification.

## INTRODUCTION

Griffin's motion is flawed in several respects. First, he failed to present any
factual support for his unfounded assertion that the selection procedures he
challenges have an adverse impact on the class he seeks to represent. Second,
Griffin passed the first component of the screening procedures and, thus, he has no
standing to challenge this selection device. Third, the potential class members at
most number <u>nine</u> since, in addition to Griffin, only ten African-Americans have

applied for jobs filled using the selection procedures Griffin challenges in this case. Thus, Rule 23's numerosity requirement is not met. Finally, Griffin's Motion is also flawed because he cannot establish the commonality and typicality requirements of Rule 23(a). For the reasons shown in greater detail below, Griffin's Motion is due to be denied.

## STATEMENT OF FACTS

The Operations Supervisor or Field Supervisor position is the primary route for union hourly employees to enter Alabama Gas's supervisory ranks. Affidavit of Randy Donaldson "Donaldson Aff.," ¶ 2. Operations Supervisors supervise bargaining unit employees assigned to various tasks including, but not limited to, meter reading, dispatch and construction. *Id.* Pursuant to the Job Opportunity Program ("JOP"), Alabama Gas posts this position to allow interested employees to apply and compete for it. *Id.* ¶ 3. Prior to January 31, 2005, Alabama Gas filled this position primarily by first screening applications to identify the applicants it believed were the best qualified. *Id.* After narrowing the list based on, among other things, job performance and experience, Human Resources and/or the hiring official would then interview the selected candidates. *Id.* After the interviews, Alabama Gas selected the person it felt was the best candidate for the position. *Id.* Alabama Gas believes it was consistent from candidate to candidate and from position to position, and that it selected the best candidate for each vacancy. *Id.*

The   selection criteria used were derived primarily from the experience of its managers and Human Resources personnel. *Id.* Over the years, however, some employees complained that the selection procedures were too subjective. *Id.*

Alabama Gas ultimately decided to revise its selection procedures for the Operations Supervisor position to ensure, among other things, that it selected candidates with the necessary skills and knowledge for the position. *Id.* ¶ 4.  In late 2003, Alabama Gas enlisted Omega Consulting to conduct a job analysis and organizational survey of the Operations Supervisor position.   *Id.*; Affidavit of Katherine Jackson "Jackson Aff.," ¶ 2.  Omega Consulting is comprised of experts in industrial and organization psychology and is run primarily by individuals affiliated with Auburn University Montgomery. Donaldson Aff., ¶ 4. Omega Consulting came highly recommended to Alabama Gas based on similar work it had done for other employers and on behalf of plaintiffs challenging selection procedures. *Id.* Alabama Gas selected Omega Consulting based on its expertise in job analysis, test development and validation. *Id.*

Omega Consulting started its review of the position in December 2003 and completed it in April 2004. Jackson Aff., ¶ 2.  In May 2004, Omega Consulting met with Alabama Gas to review the initial findings. *Id.* Sometime thereafter, Alabama Gas enlisted Omega Consulting to develop a selection procedure for the Operations Supervisor position. *Id.* Omega Consulting developed these procedures

during the months of September through December 2004. *Id.* In May and June 2005, Omega Consulting developed behavioral competencies for the position. *Id.*

As part of its work, Omega Consulting met with over 30 Operations Supervisors who had held the position for at least six months and with the supervisors of some of these employees. Jackson Aff., ¶¶ 7-11. Omega Consulting interviewed these employees individually and in groups, and also had each of them fill out a questionnaire that took approximately five hours to complete. *Id.* After gathering and analyzing the data and meeting with a Technical Advisory Committee that included managers and supervisors of the Operations Supervisor position, Omega Consulting eventually recommended that Alabama Gas use the Hogan Personality Inventory ("the HPI") as an initial screening mechanism for the Operations Supervisor position. *Id.* ¶¶ 11-12.

The HPI is designed to predict occupational success based on the Five-Factor Model of personality. Jackson Aff., ¶ 12. The creators of the HPI, Hogan Assessment Systems, "normed it" on more than half a million working adults and found it had no adverse impact on minorities or women. *Id.* The support for using the HPI "comes from the similarity between the Alabama Gas jobs and jobs for which Hogan Assessment Systems has extensive criterion-related validity data <u>and</u> through specific information about the Alabama Gas job and what type of worker characteristics improve performance in those specific jobs." *Id.* Hogan Assessment

Systems conducted the validation studies for the Operations Supervisor position using the extensive database of information from other organizations and Alabama Gas-specific information Omega Consulting provided to them. *Id.* Again, they found that the HPI would not have any adverse impact on minorities and women. *Id.*

According to Omega Consulting, "the HPI measures dimensions important to performing well as an Operations Supervisor. A candidate who is not conscientious about the work, who does not demonstrate initiative, or demonstrates poor adjustment in response to difficult customers, crisis work situations, changing work processes or environments, or unexpected events, is not well-suited for the Operations Supervisor position. This job requires that Operations Supervisors handle difficult customers and situations with tact and a calm approach. The job demands attention to detail and conscientiousness. Without these abilities, the Operations Supervisor can make serious errors in judgments regarding technical situations and provide inaccurate information to employees. Those individuals most successful in such a situation demonstrate initiative and are results-focused and self-assured." Jackson Aff., ¶ 14.

"Cut-off scores applied to the HPI ensure that every candidate interviewed by Alabama Gas's supervisors would have demonstrated, at least at a minimal level, adequate scores on the adjustment, conscientiousness, and ambition scales."

*Id.* ¶ 13. For the Operations Supervisor position, Omega Consulting set the cut-off score at 60 for Adjustment, 55 on Ambition and 50 on Prudence. Donaldson Aff., ¶ 8.

Candidates who successfully complete the HPI advance to the structured interview, which is the most time-intensive part of the process and is "the final piece of information used to make an employment decision." Jackson Aff., ¶ 13. The structured interview is "an important step in the selection process." *Id.* ¶ 15. Among other things, it "allows a candidate to demonstrate problem analysis and decision making skills, oral communications skills, interpersonal skills, supervision ability, management ability, [and] technical knowledge and skills" – all of which are important knowledge, skills and abilities ("KSAs") for the position. *Id.* The structured interview "allows the supervisor, for whom the candidate will be working, the opportunity to meet with the candidate prior to making a job offer and to assess his/her job-related skills during this meeting." *Id.* Significantly, based on the research Omega conducted on the structured interview, Omega concluded that "it is likely that this interview will have no adverse impact, but great predictive value and validity." *Id.*

According to Omega, "although no adverse impact calculations were feasible at the time [it] prepared [a] report for Alabama Gas, the history of adverse impact for the procedures included in this process leads [it] to predict little or no

adverse impact for these procedures." Jackson Aff., ¶ 16. Omega added further that the procedures it developed for Operations Supervisor "contain several steps which reflect an effort to reduce potential adverse impact against protected groups while maintaining the content validity of the procedures.  Major features of the present interview that constituted explicit efforts to minimize potential adverse impact included:  (1) all general structured interview questions were reviewed and edited by a psychologist who examined each item for language level to ensure the language was not confusing nor too high of a reading level; (2) all interview questions were reviewed and rated by panels of SMEs [subject matter experts] that were representative with respect to race and gender; (3) no interview questions were rated as "biased" by any one of the SMEs; (4) the interview questions are highly structured, employing objective response standards and based solely upon KSAs needed for job success, thereby enhancing inter-rater reliability and minimizing rater bias; and (5) an assessor training program and manual were presented to all individuals administering and evaluating the structured interview. Procedures for standardized administration were emphasized." *Id.*

Alabama Gas first used the HPI and the structured interview for the Operations Supervisor position on January 31, 2005. Donaldson Aff., ¶ 7.  To date, Alabama Gas has used it to fill eight positions: (1) January/February 2005 – Operations Supervisor Anniston; (2) January/February 2005 – Operations

Supervisor Gadsden; (3) April 2005 – Field Supervisor Birmingham; (4) April 2005 – Operations Supervisor Montgomery; (5) November 2005 – Operations Supervisor Opelika; (6) November 2005 – Field Supervisor New Construction Birmingham; (7) April 2006 – Field Supervisor I & O Birmingham; and (8) July 2006 – Supervisor Customer Service[1]. *Id.* ¶¶ 7, 12.

For these eight positions, 55 employees took the HPI and 37 passed. *Id.* ¶ 7. The 55 employees include ten African-Americans: Donna Collins, Willie Simmons, Juanita Chamblin, Nytosha Lott, Juanita Austin, Robert Blevins, Sylvester Cannon, Griffin, George Watson and Timothy White. *Id.* Eight of the ten, including Griffin, passed the HPI. *Id.* These ten applied for the following positions:

1.    January/February 2005 – Operations Supervisor Gadsden and Anniston – Alabama Gas used the same applicant list for both positions. Thirteen individuals applied for these two positions, including African-Americans Donna Collins, George Watson and Willie Simmons. *Id.* ¶ 12(a);

2.    April 2005 – Field Supervisor Birmingham – Twelve individuals applied for this position, including African-Americans Griffin, Bernard Witt and Robert Blevins. *Id.* ¶ 12(b). Witt and Blevins withdrew before taking the HPI. So,

---

[1] This Supervisor Customer Service position is in Operations and is distinguishable from Commercial Office customer service supervisor positions, which do not have a Hogan or structured interview module. Donaldson Aff., ¶ 12(g). This position supervises the Birmingham Dispatch Office, which includes supervising bargaining unit employees and responding to call-outs and emergency calls. *Id.*

for this position, they are not included in the list of the ten African-American HPI takers;

3.      November 2005 – Field Supervisor New Construction – Birmingham. Seventeen individuals applied for this position, including African-Americans Griffin, Robert Blevins, Sylvester Cannon, Joe Ivy and Timothy White. *Id.* ¶ 12(e). Ivy withdrew before taking the HPI and is not included in the list of ten above. *Id.* Blevins, who withdrew before taking the HPI for the April 2005 Field Supervisor position, took the HPI for this position. Consequently, for this position, he is counted as one of the ten HPI takers. Finally, Griffin did not have to retake the HPI since he passed it in April 2005. *Id.* ¶¶ 7- 8;

4.      April 2006 – Field Supervisor I & O Birmingham – Griffin was the only African-American who applied for this position. *Id.* ¶ 12(f). Again, because he had taken and passed the HPI, he automatically advanced to the structured interview. *Id.* However, for reasons Griffin refused to explain, unlike in April and November 2005 when he sat for structured interview, this time he refused to sign the Confidentiality Agreement which, among other things, asks that the candidate agree to refrain from discussing the specific interview questions with other employees. *Id.* Confidentiality is essential because one of the key elements of the structured interview is that each candidate is asked the same set of questions in the

exact same order. *Id.* Because Griffin refused to sign the Agreement, he was not interviewed for the position. *Id.*; and

5.      July 2006 – Supervisor Customer Service – Nine individuals, including African-Americans Juanita Austin, Juanita Chamblin and Nytosha Lott, applied for this position. *Id.* ¶ 12(g).  All three passed the HPI. Moreover, Austin also successfully completed the structured interview. *Id.* ¶¶ 9, 12(g).

Once an employee passes the HPI, they no longer have to retake it.  *Id.* ¶ 8. Thereafter, when that employee applies again for an Operations Supervisor position, that employee automatically advances to the structured interviews. *Id.* Likewise, once an employee achieves a passing score of 56 or higher on the structured interview, they no longer have to retake it. *Id.* ¶ 11. Instead, if that employee applies for another Operations Supervisor vacancy, they are automatically considered for that position, along with any other successful candidates. *Id.*

Alabama Gas notes that the Omega Consulting created procedures have actually afforded employees the opportunity to interview for positions for which they would not have received interviews for under the prior selection procedures. Donaldson Aff., ¶ 19.  For example, when Griffin applied for the April 2005 and November 2005 positions, because of the large number of applicants, under the old system, Alabama Gas would have likely screened the candidates based, in part, on

years of experience. *Id.* Since Griffin only had five years of Alabama Gas experience, it is unlikely that he would have made it to the interview stage because the other candidates had far greater years of service than him. *Id.* In contrast, under the new system Griffin challenges, regardless of years of service, any employee who scores at or above the passing cut-offs on the HPI automatically receives an interview in the structured interview phase and, thereby, has an opportunity to compete with the other successful candidates. *Id.*

The Operations Supervisor position is the only supervisory position for which Alabama Gas has implemented the HPI. *Id.* ¶¶ 6, 18.  When Alabama Gas adopted these selection procedures, Alabama Gas notified all applicants for Operations Supervisor vacancies of the new procedures and explained to them the selection process.  *Id.* ¶ 20. Also, Alabama Gas has created a question and answer pamphlet that describes the procedures and has given it to applicants. *Id.*

Since the adoption of the Omega Consulting selection procedures, except for Ken Williams, who is African-American, all employees promoted to Operations Supervisor positions have taken and passed the HPI and structured interview. *Id.* ¶ 21. Williams was a Field Engineer in the Birmingham Division assigned to Cast Iron Replacement. *Id.* While on this job, his duties and responsibilities increased to the point where he was functioning as an Operations Supervisor, *i.e.* he oversaw and supervised the work of bargaining unit employees. *Id.* Because he was already

doing the job, Alabama Gas officially moved him into a Field Supervisor Cast Iron Replacement Birmingham position on June 2, 2006, without using the Omega selection process. *Id.*

Likewise, Tommy Holcombe, who received the Operations Supervisor Anniston position in February 2005, and Karl Peterson, who received the April 2005 Field Supervisor position when he returned from military leave, also did not have to use the Omega selection procedures. *Id.* ¶ 23. Both were already supervisors in Operations and simply transferred laterally. *Id.*

Finally, another supervisor, Todd Harmon, had to use the Omega selection procedures because his move involved a transfer from the Commercial Office (which does not have an Omega selection process for supervisory positions) to a position in Operations. *Id.* ¶¶ 12(c), 22. Although he was already a supervisor, it was only after Harmon passed the HPI and the structured interview that he transferred into an Operations Supervisor position. *Id.*

## ARGUMENT

Griffin has moved for class certification under Federal Rule of Civil Procedure 23(b)(2). He bears the burden of proving that he meets the Rule 23 requirements. *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 613-14 (1997); *Valley Drug Co. v. Geneva Pharmaceuticals, Inc.,* 350 F.3d 1181, 1187 (11th Cir. 2003). Specifically, he must first demonstrate that: "(1) the class is so numerous

that joinder of all members is impracticable" (numerosity), "(2) there are questions of law or fact common to the class" (commonalty), "(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class" (typicality), and "(4) the representative parties will fairly and adequately protect the interest of the class" (adequacy of representation).  Fed. R. Civ. P. 23(a); *Prado-Steiman v. Bush,* 221 F.3d 1266, 1278 (11th Cir. 2000).  If Griffin can meet all four requirements of 26(a), he must then show, under Rule 26(b)(2) that Alabama Gas "has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."  Fed. R. Civ. P. 23(b)(2).

Although the Court has broad discretion in determining whether to certify a class, *Coon v. Georgia Pacific Corp.,* 829 F.2d 1563, 1566 (11th Cir. 1987), it must perform a "rigorous analysis" to ensure that the plaintiff has "scrupulously" met the requirements of Rule 23.  *General Tel. Co. v. Falcon*, 457 U.S. 147, 160-61 (1982).  "'[W]hile it is true that a trial court may not properly reach the merits of a claim when determining whether class certification is warranted, this principle should not be talismanically invoked to artificially limit a trial court's examination of the factors necessary to a reasoned determination of whether a plaintiff has met h[is] burden of establishing each of the Rule 23 class action requirements.'" *Cooper v. Southern Co.,* 390 F.3d 695, 712 (11th Cir. 2004) (*quoting Love v.*

*Turlington,* 733 F.2d 1562, 1564 (11th Cir. 1984)).  This is especially true where, as in this case, the plaintiff only presents mere speculation and conjecture of discrimination in support of the class allegations.  "As the Supreme Court has noted, the bare allegation that racial discrimination has occurred 'neither determines whether a class action may be maintained . . . nor defines the class that may be certified.'" *Cooper,* 390 F.3d at 712 (*quoting General Tel. Co. v. Falcon,* 457 U.S. 147, 157 (1982)).

Griffin fails to meet Rule 23's requirements, and his motion to certify is due to be denied.

**A.     Griffin Has No Standing to Challenge The Selection Procedures**

Any analysis of class certification must begin with the issue of standing. *Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987).  In the context of a class, "at least one named plaintiff [must have] suffered the injury" giving rise to each claim. *Id.* Here, Griffin lacks standing to challenge the HPI component of the selection process because he successfully passed the HPI the first time he took it in April 2005.   Donaldson Aff., ¶ 7; *see Griffin*, 823 F.2d at 1483-84 (holding plaintiff lacked standing to challenge employer's use of an entry level examination which allegedly impacted hiring of black employees because named plaintiff had already met the testing requirements for the job);  *Howard v. New Jersey Dept. of Civil Service*, 667 F.2d 1099, 1103 (3rd Cir. 1981) ("We conclude that plaintiffs

have suffered no injury caused by the conduct they challenged as discriminatory …

[and] are therefore without standing" to challenge defendant's test).   Because

Griffin does not have standing to challenge the HPI, his motion for class

certification is due to be denied.

**B.     Griffin Cannot Adequately Define the Proposed Class.**

Even if Griffin has standing, the motion still fails because Griffin's proposed

class definition is a moving target, making it impossible to determine the class he

is requesting the Court certify.  In his Amended Complaint, filed on September 1,

2006, he defines the proposed class as: "African-American employees of the

Alabama Gas Corporation who within the last two (2) years were denied job

promotions to non-bargaining unit positions, the opportunity for such positions,

and salary increases on account of race, regardless of whether such employees are

salaried, hourly, union or non-union workers."  (Am. Compl. ¶ 9, Dkt. 13).

In Griffin's Motion for Class Certification, filed on September 15, 2006, his

proposed class broadens significantly to include: "Plaintiff and all other African-

American employees and former African-American employees of the Defendant

who were employed by the Defendant and those who will in the future be

employed by the Defendant and, upon information and belief, have been denied

promotions, are or were working in lower positions, or have been discriminatorily

deprived wages, benefits, and other emoluments of employment that are or have been enjoyed by similarly or less qualified caucasian [sic] employees." (Motion for Class Certification ¶ 1, Dkt. 15).

Finally, in Griffin's Memorandum in Support of Motion for Class Certification, also filed on September 15, 2006, he claims to represent a more narrow class of "African-American employees of the Alabama Gas Corporation who within the last two (2) years were denied job promotions to non-bargaining unit positions, the opportunity for such promotions, and salary increases on account of race, regardless of whether such employees are salaried, hourly, union or non-union workers, as a result of the 'Hogan Assessment Test' or the 'Structured Panel Interview.'" (Pl. Brief pp. 1-2, Dkt. 16-1).

This Court should deny class certification based on the undefined and vague "class" asserted by Griffin. *LaBauve v. Olin Corp.,* 231 F.R.D. 632, 662 (S.D. Ala. 2005) ("Although not an express Rule 23 requirement, it is imperative that Class A (and its various subclasses) be definable in a reasonable manner. In order for a party to represent a class, the class sought to be represented must be adequately defined and clearly ascertainable." (internal quotations omitted)). Obviously the potential members of each of class vary greatly and any determination of who Griffin intends to include in the class is sheer guesswork. For example, the potential class in the Motion for Class Certification is so broad as to include both

former and future Alabama Gas employees who were denied any job promotion at any time in the past or future regardless of their job positions or experience, while the potential class in Griffin's Memorandum only includes current employees who were denied promotions as a result of the Hogan Assessment Test or the Structured Panel Interview within the last two years. Because Griffin's class definition is undefined and vague, this Court should deny the motion to certify a class.

**C.    Griffin Fails to Meet the Requirements of Rule 23(a).**

Alabama Gas assumes, for purposes of this memorandum, that the "class" Griffin is seeking to certify is the one set forth and addressed in his Memorandum in Support of Motion for Class Certification.[2] For the reasons below, Griffin's purported class fails to meet the requirements of Rule 23(a) and his Motion is due to be denied.

**1.    Joinder is practicable because there are only 9 potential class members.**

Rule 23(a)(1) requires that the class be <u>so numerous</u> that joinder of all members is impracticable.  In his Memorandum, Plaintiff proposes a class limited

---

[2] Alabama Gas makes this assumption because the Memorandum is the last document Griffin filed.  Also, in this Memorandum, Griffin uses the restrictive term "only" in his description of the proposed class: "Plaintiff seeks certification of a class under Rule 23(b)(2) consisting *only* of the following persons." *See* Pl. Brief p. 1, Dkt. No. 16-1(emphasis added).  Regardless, the "classes" as defined in his Amended Complaint and Motion for Class Certification also fail to meet the requirements of Rule 23. To the extent Griffin is attempting to certify a class based on either of those definitions, Alabama Gas reserves the right to fully respond to Griffin's allegations.

to African-American employees within the last two years who were allegedly denied job promotions, opportunities for job promotions, and salary increases on account of their race "as a result of the 'Hogan Assessment Test' or the 'Structured Panel Interview.'"  (Pl. Brief pp. 1-2, Dkt. 16-1).

The Operations Supervisor position is the only supervisory position for which Alabama Gas uses the HPI and the structured interviews. Donaldson Aff., ¶¶ 5-6. As a threshold matter, Alabama Gas notes that Griffin has presented no support for his broad and sweeping assertion that these selection procedures have an adverse impact on African-Americans. In fact, they do not. Specifically, Omega Consulting selected the HPI as an initial screening mechanism, in part, because "[i]t has been normed on more than half a million working adults." Jackson Aff., ¶ 12.  Omega Consulting further selected the HPI because of the similarity between the Operations Supervisor position and the "jobs for which Hogan Assessment Systems [the creators of the HPI] has extensive criterion-related validity data <u>and</u> through specific information about the Alabama Gas job and what type of worker characteristics improve performance in those specific jobs." *Id.* Contrary to Griffin's contention, the Hogan Assessment Systems' "inventory has a history of <u>no</u> adverse impact." *Id.* (emphasis added). In fact, Omega Consulting concluded that "[b]ased on the research conducted on the HPI, it is likely that it will have no adverse impact but great predictive value and validity." *Id.* ¶ 14.

Omega Consulting reached a similar conclusion for the structured interview. Jackson Aff., ¶ 15. In fact, Omega Consulting selected the structured interview, in part, because "[s]tructured interviews do not tend to have adverse impact against any racial or gender group." *Id.* ¶ 18. Significantly, Omega Consulting utilized several steps to reduce any potential adverse impact. *Id.* ¶¶ 16-17.

Alabama Gas first utilized the HPI and structured interview for the Operations Supervisor position on January 31, 2005. Donaldson Aff., ¶ 7. Alabama Gas has currently <u>only</u> used it to fill eight positions. *Id.* ¶¶ 7,12. For these eight positions, 55 total individuals have taken the HPI. *Id.* ¶ 7. Only ten of these individuals are African-American. *Id.* Eight of the ten passed the HPI, including Griffin who passed it the first time he took it in April 2005. *Id.*

"[W]hile there is no fixed numerosity rule, generally less than twenty-one is inadequate, more than forty adequate, with numbers in between varying according to other factors." *Cox v. American Cast Iron Pipe Co.,* 784 F.2d 1546, 1553 (11th Cir. 1986). Here, there is only <u>one</u> named Plaintiff and potentially **9** class members. Donaldson Aff., ¶¶ 7, 12. This number is insufficient for class certification. *See Jones v. Roy,* 202 F.R.D. 658, 665-66 (M.D. Ala. 2001) (denying class certification for 21-member class). Indeed, joinder of at most 9 individuals is practical and there is no showing that these claims cannot be litigated in a non-class format. Accordingly, Griffin cannot satisfy the numerosity requirement.

This failure alone is fatal to his Motion for Class Certification.

**2.    Griffin cannot demonstrate that a sufficient nexus exist between his legal claims and those of the proposed class.**

The Motion also fails because Griffin cannot satisfy the typicality and commonality requirements. These two requirements of Rule 23(a) tend to overlap. *Cooper v. Southern Co.,* 390 F.3d 695, 713 (11th Cir. 2004). Commonality "measures the extent to which all members of a putative class have similar claims." *Id.* at 714. "[T]ypicality refers to the individual characteristics of the named plaintiff in relation to the class." *Id.*

Griffin has failed to demonstrate either commonality or typicality. Generally, to prove commonality and typicality, a plaintiff will present evidence of disparate impact. Here, Griffin speculates (without any supporting evidence) that Alabama Gas's use of the HPI and structured interview screens out African-American applicants for supervisory positions and creates a disparate impact. (Pl. Brief p. 4, Dkt. 16-1; Am. Compl. ¶¶ 23-25, Dkt. 13).

In the first stage of a disparate impact case, a plaintiff must "demonstrate[ ] that the [employer] uses a particular employment practice that causes a disparate impact on the basis of race." 42 U.S.C. § 2000e-2(k)(1)(A)(i); *Cooper,* 390 F.3d at 716 ("To prove disparate impact, a plaintiff *must* establish the existence of a statistically significant disparity among members of different groups affected by a

type of employment decision; a specific, facially neutral employment practice involved in the decision; and a causal nexus between the facially neutral employment practice and the statistically significant disparity." (citation omitted)).

In this matter, Griffin does not present <u>any</u> admissible evidence in support of his belief that the HPI or structured interview has a disparate impact. He has offered no statistical or anecdotal evidence demonstrating that African-American employees have been treated less favorably than similarly situated white employees. In fact, he fails to identify <u>one</u> other potential class member. Additionally, he has not submitted affidavits, testimony or declarations of any potential class members who claim they were denied job promotions because of their race. *See, e.g., Wright v. Circuit City Stores, Inc.,* 201 F.R.D. 526, 540-41 (N.D. Ala. 2001) (denying class certification in a disparate treatment promotion case where plaintiffs failed to demonstrate any identifiable pattern or practice that affects a definable class).

At most, Griffin alleges that "Lois Brown, Kelli Leslie, Sharon Davis, Jennifer Osborn and Donna Collins (all white) were awarded supervisory positions without completing" the HPI. (Pl. Brief p. 4, Dkt. 16-1). Griffin's speculations are misguided. First, Ms. Brown and Ms. Davis are African-American, not white as claimed by Griffin. Donaldson Aff., ¶ 18. Second, Griffin's contention that Alabama Gas failed to use this assessment for these employees misses the mark

completely. All of these individuals – along with African-Americans Pat Washington and Evon Moss who were also moved into similar supervisory positions around the same time – work in Commercial Office positions. *Id.* None of their respective positions has an Omega assessment process in place and, thus, would not be included in the proposed class. *Id.*   Alabama Gas only started utilizing the HPI and structured interview in January 2005 and has currently <u>only</u> used it for the entry level field Operations Supervisor positions.[3] *Id.* ¶ 7.

Griffin's own belief that he was discriminated against is not enough to maintain a class action.  As the Supreme Court held in *Falcon*:

> Conceptually, there is a wide gap between (a) an individual's claim that he has been denied a promotion on discriminatory grounds, and his otherwise unsupported allegation that the company has a policy of discrimination, and (b) the existence of a class of persons who have suffered the same injury as that individual, such that the individual's claim and the class claims will chare common questions of law or fact and that the individual's claim will be typical of the class claims.  For respondent to bridge that gap, he must prove much more than

---

[3] Griffin also speculates that certain jobs are not posted in order to prevent African-Americans from applying.  (Pl. Brief p. 6, Dkt. 16-1).  Alabama Gas's posting policy is outlined in its Job Opportunity Program ("JOP"). Donaldson Aff., ¶ 13.  The JOP states clearly that posting is limited to "clerical positions, entry-level technical and professional positions, and first-line supervisory positions of non-exempt employees." *Id.* The Company has never posted higher level positions since it knows precisely the group of employees that are eligible for each higher level position.  *Id.* ¶ 14. In that respect, for example when it has a Superintendent vacancy (like the positions received by Eddie Birdshaw and Mike Gorenflo), it knows that front level supervisors make up the relevant pool of candidates and will therefore consider them as candidates for the position.  *Id.* Specifically, when it has a vacancy, Alabama Gas prepares a HRIS report showing all employees. *Id.* This report is sorted by job, pay grade and experience to form a candidate list based on the job duties for the vacant position. *Id.* The Human Resources Department reviews this list of potential candidates with the hiring supervisor, who in conjunction with Human Resources identifies candidates for interviews. *Id.* This very same process has resulted in African-Americans Terry Smiley, Henry Buchanan, Lehman Tucker and Joe Hampton receiving promotions to Superintendent positions. *Id.* ¶ 15. In fact, Hampton was recently promoted to Division Manager-Selma, also a non-posted position. *Id.*  Finally, Alabama Gas currently notes that three of its eleven Superintendents are African-American. *Id.*

the validity of his own claim.

*Falcon,* 457 U.S. at 157-58.  Griffin cannot bridge that gap and as a result class certification should be denied.

Alternatively, even if this Court overlooks Griffin's failure to present evidence of disparate impact and simply accepts Griffin's unfounded assertion, Griffin still cannot establish the commonality and typicality requirements of Rule 23(a). Specifically, Griffin cannot even show that his claims are typical of the class he seeks to represent. Again, Griffin lacks standing to challenge the HPI component because he passed the HPI the first time he took it in April 2005. Donaldson Aff., ¶ 7.  Moreover, because he passed the HPI, Griffin no longer has to take it. *Id.* ¶ 8. Instead, whenever he applies for an Operations Supervisor position, he automatically advances to the structured interview phase of the section process. *Id.*  Because he was not and will never be adversely affected by the HPI, Griffin's claims are hardly typical of the class he seeks to represent, *i.e.* those individuals he contends were adversely impacted by the HPI.

Likewise, the claims of the proposed class are not common. Again, eight of the potential ten class members passed the HPI, (Donaldson Aff., ¶ 7), making their claims different from those class members who failed it or will allegedly fail it in the future. Similarly, the claims of the one potential class member who passed the structured interview, (*id.* ¶ 9), are not similar to those of the potential class

members who scored below the minimum passing score. Certainly, given the limited number of jobs in question, the likelihood exists that in the remedy phase the successful HPI class members would contend that they should not have to compete for positions with those class members who failed the HPI. Likewise, the successful candidates on the structured interview may also contend that they should not have to compete with those class members who passed the HPI, but scored below the passing score on the structured interview.

As is evident, the claims of the class members, as they relate to the selection procedures in question, are not common. Indeed, an inherent conflict exists amongst the potential class members since the selection procedures affected each of them differently. Class certification is inappropriate.

### 3.    Griffin does not adequately protect the interest of the proposed class.

Finally, Griffin cannot establish that as a representative party he will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 26(a)(4). The adequacy of representation analysis encompasses: (1) whether any substantial conflicts of interest exist between the representative and the class; and (2) whether the representative will adequately prosecute the action. *Valley Drug Co. v. Geneva Pharmaceuticals, Inc.,* 350 F.3d 1181, 1187 (11th Cir. 2003). Griffin is not an adequate class representative.

Griffin's Memorandum suggests he is seeking only injunctive relief and "equitable restitution in the form of back-pay and front-pay," for the class. (Pl. Brief p. 12, Dkt. 16-1).[4] However, he also has an individual disparate treatment claim in this lawsuit pursuant to Title VII and 42 U.S.C. § 1981 in which he is apparently seeking, among other things, back pay and compensatory damages for "mental anguish and emotional distress." (Am. Compl. ¶ 22, Dkt. 13). Thus, to the extent Griffin is pursuing a remedy for himself that he is not seeking for the class, this is a conflict. *See Drayton v. Western Auto Supply Co.*, 2002 WL 32508918 (11th Cir. 2002) (noting plaintiffs who seek individual remedies not available to the class would not be adequate representatives and stating that "just one example of the potential conflict, [plaintiffs] could be influenced by their desire to maximize their individual gains in any negotiations for a class settlement").

Furthermore, if the Court were to certify a mandatory class under Rule 23(b)(2) – as requested by Griffin – this would also create an inherent conflict between the named Plaintiff and the proposed class. Unlike a (b)(3) class, a (b)(2) class is *mandatory* – thus absent class members who want an individualized determination of their claim for money damages will not be able to "opt out" of a (b)(2) class to pursue separate actions but will be bound by res judiciata. Thus, a

---

[4] The Amended Complaint, however, states that Plaintiff and apparently the proposed class members are seeking punitive and compensatory damages. (Am. Compl. Pray for Relief ¶¶ 3, 5, Dkt. 13).

(b)(2) class cuts off the rights of absent class members to recover monetary damages themselves or to have an individualized determination of their claims, which could put their due process rights at risk. *See, e.g., Ortiz v. Fibreboard*, 527 U.S. 815, 846 (1999) (noting certification of mandatory class that includes money damages may compromise Seventh Amendment and due process rights of absent class members); *Cooper*, 390 F.3d at 721 (stating that named plaintiffs would not be adequate representatives even if damages were excluded from the 26(b)(2) class because "to many of the class members (and especially to those who no longer work for the defendants), the monetary damages requested might be of far greater significance than injunctive relief"). Due to the clear conflicts of interest between Griffin and the proposed class members, he is not a proper representative and cannot adequately represent the proposed class.


**D.    Class Certification is not Proper Under Rule 23(b)(2).**

Even if Griffin could meet his burden of establishing the requirements for class certification under 23(a), certification is still not appropriate because Griffin cannot satisfy the requirements of 23(b)(2). An action may be brought under Rule 26(b)(2) only when the plaintiff alleges that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect

to the class as a whole." Fed. R. Civ. P. 26(b)(2).

Section (b)(2) does not apply to cases where the proper final award related either solely or primarily to money damages to the class as individuals. Fed. R. Civ. P. 23(b)(2) adv. comm. notes (1966). As the Eleventh Circuit has held, "[m]onetary relief may be obtained in a Rule 23(b)(2) class action [only] so long as the *predominant* relief sought is injunctive and declaratory relief." *Murray v. Auslander*, 244 F.3d 807, 812 (11th Cir. 2001) (emphasis added); *see also Cooper*, 390 F.3d at 720-21. "[M]onetary relief predominates in (b)(2) class actions unless it is *incidental* to requested injunctive or declaratory relief." *Murray*, 244 F.3d at 812. "Incidental" means that "damages flow directly from liability *to the class as a whole*," that "[l]iability for incidental damages [does] not . . . entail complex individualized determinations," and that damages will "by definition, be more in that nature of a group [rather than an individual] remedy." *Id.* (reversing (b)(2) class certification in disability discrimination case because compensatory damages claims were not "incidental" to injunctive and declaratory relief). Again, this limitation is particularly significant because a (b)(2) class cuts off the rights of absent class members to recover monetary damages themselves or to have an individualized determination of their claims. *See supra* Section C(3).

Although in his Memorandum Griffin suggests that he is only seeking injunctive and equitable relief (in the form of back pay damages), Griffin

indisputably seeks compensatory and punitive damages, and attorneys' fees. (Pl. Brief pp. 15-16, Dkt. 16-1; Am. Compl. Prayer for Relief ¶¶ 3, 5, Dkt. 13). Griffin's claims for compensatory and punitive damages are not "incidental" to his claims for injunctive and declaratory relief and instead predominate. *See e.g., Murray,* 244 F.3d at 812 (finding the district court abused its discretion in certifying a (b)(2) class where plaintiffs sought compensatory and punitive damages because they are a remedy for "inherently individual injuries" that would compel "an inquiry into each class member's individual circumstances"). Compensatory damages "are anything but equitable in nature; they are, in fact, the very definition of *legal* relief." *Reid v. Lockheed Martin Aeronautics Co.,* 205 F.R.D. 655, 681 (N.D. Ga. 2001) (*quoting Rutstein v. Avis Rent-A-Car Sys., Inc.,* 211 F.3d 1228, 1239 (11th Cir. 2000)). Moreover, to recover punitive damages under Title VII the "statue plainly requires a fact specific inquiry into the circumstances of the individual plaintiff, and punitive damages therefore 'cannot be assessed merely upon a finding that the defendant engaged in a pattern or practice of discrimination.'" *Id.* (internal citation omitted) (*quoting Allison v. Citgo v. Petroleum Corp.,* 151 F.3d 402, 417 (5th Cir. 1998).

Griffin's demand for compensatory and punitive damages is fatal to his attempt to pursue this matter as a Rule 23(b)(2) class action. Accordingly, the Motion is due to be denied.

# CONCLUSION

Griffin has presented no evidence that would warrant class certification. First, he has no standing to challenge the HPI since he passed it the very first time he took it. Second, the three "class" definitions presented by Griffin make it impossible to determine what Griffin is seeking the Court certify. Third, he has not met any of the factors of Rule 26(a). In fact, the proposed class he seeks to represent only has nine potential members, well short of the number necessary to satisfy the numerosity requirement. Finally, because he is seeking compensatory and punitive damages, (b)(2) class certification is not appropriate.

        s/Abdul K. Kallon

        James Walker May
        Abdul K. Kallon
        Stacey T. Bradford
        Attorneys for Alabama Gas Corporation

Of Counsel

Bradley Arant Rose & White LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203-2104
(205) 521-8000

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October $\underline{3^{rd}}$ , 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

> Joe R. Whatley, Jr.
> Andrew C. Allen
> Whatley Drake & Kallas, LLC
> 2323 2nd Avenue North (35203)
> Post Office Box 10647
> Birmingham, AL 35202-0647
>
> J. L. Chestnut, Jr.
> Chestnut Sanders Sanders Pettaway & Campbell PC
> PO Box 1290
> Selma, AL 36702-1290

and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

> None.

> Respectfully submitted,
> s/ Abdul K. Kallon
> _____
> Abdul K. Kallon (ASB-9518-L62A)
> Bradley Arant Rose & White LLP
> One Federal Place
> 1819 Fifth Avenue North
> Birmingham, AL 35203-2104
> Telephone: (205) 521-8000
> Facsimile: (205) 521-8800
> E-mail: akallon@bradleyarant.com