IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JEROME W. GRIFFIN, for himself and all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. |
| v. | ) ) | 2:06-CV-0365-MEF |
| ALABAMA GAS CORPORATION, | ) ) ) | |
| Defendants. | ) | |

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF THE
AMENDED MOTION FOR CLASS CERTIFICATION**

Comes now the Plaintiff in the above-styled cause, and submits this Reply Memorandum in Support of Plaintiff's Amended Motion for Class Certification.

**Substantial Evidence Suggests
Defendant's Testing Procedures are Flawed**

As a preliminary matter, what Defendant essentially seeks in their response is a premature ruling by this Court on the merits of Plaintiff's adverse impact claim. This case was only recently filed in April of this year. Defendant answered the initial Complaint on May 22, 2006, and in accordance with the Court's Rule 26(f) Order of May 30th, 2006, the parties conferred and timely submitted a joint discovery plan by June 19, 2006. The Court's existing Scheduling Order does not call for dispositive motions before July 3, 2007 and the discovery deadline is not until September 17, 2007.

Thus, as the Court is well aware, the Plaintiff's Motion for Class Certification is filed in a relatively early phase of these proceedings and prior to any significant discovery taking place. However, as the Manual for Complex Litigation expressly notes, "the determination whether the

prerequisites of Rules 23(a) and (b) are satisfied can generally be made on the pleadings and declarations, with relatively little need for discovery." Manual for Complex Litigation, 3d, § 30:2 at 215 (1995)(emphasis added). Similarly, Newberg's Class Action Treatises notes that "most courts ... have reached initial class determinations without the aid of additional information enlisted by the parties through pretrial discovery." 3 Newberg on Class Actions, § 7:03, at 7-15 (Thomson 4th ed. 2002).

As noted in Plaintiff's initial submission, the United States Supreme Court held that there is nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action. Indeed, such a procedure contravenes the Rule. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974). *See, Kirkpatrick v. J. C. Bradford & Co.*, 827 F.2d 718 (11th Cir. 1987), cert. denied., 485 U.S. 959 (1988); *Fifth Moorings Condominiums, Inc. v. Shere*, 81 F.R.D. 712 (S.D. Fla. 1979). *See, Walco Investments, Inc. v. Thenen*, 168 F.R.D. 315, 336 (S.D. Fla. 1996)(at this stage of the proceedings [delving into factual matters] would be tantamount to an improper examination of the underlying merits).

Moreover, Rule 23 should be given "a liberal rather than a restrictive interpretation." *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 563 (2nd Cir. 1968), rev'd on other grounds, 417 U.S. 156 (1974). "[I]f there is to be an error made, let it be in favor and not against the maintenance of the class action." *Esplin v. Hirschi*, 402 F.2d 94, 99 (10th Cir. 1968), cert. denied, 394 U.S. 928 (1969). *See also, Eisenberg v. Gagnon*, 766 F.2d 770 (3d Cir. 1985); *Green v. Wolf Corp.*, 406 F.2d 291 (2d Cir. 1968), cert. denied, 395 U.S. 977 (1969); *CV Reit, Inc. v. Levy*, 114 F.R.D. 690, 695 (S.D. Fla. 1992); *Joseph v. General Motors Corp.*, 109 F.R.D. 635 (D. Colo. 1986)(any doubts should be resolved in favor of class certification).

Thus, Defendant's contentions to the contrary (Defendant's Memorandum, at pp. 1, 18, 21-23), Plaintiff is under no obligation to present any factual support of his claims at this stage of the litigation. Notwithstanding, Plaintiff has engaged experts to analyze the Defendant's challenged personnel policies. Plaintiff has filed contemporaneously with this Reply the Affidavit of Susan Cromwell Duncan. a Doctor of Philosophy in Educational Psychology – Research, Measurement, and Statistics. (See Duncan Affidavit, p. 2). Dr. Duncan's review of the challenged tests reveals significant flaws in the manner in which Defendant's industrial psychologists, Omega Consulting, attempted to validate its testing procedures.

Specifically, Dr. Duncan found two primary concerns with the claims made by Omega Consulting resulting from the work they conducted for Alabama Gas Corporation hereinafter ("AGC"). (*Id.*). These flaws included the disproportionate representation of protected groups in the construction of their tests, the lack of testing for disparate impact, and the lack of any measurement on the part of Omega Consulting to determine if the tests they developed could or did lead to any disparate impact or had the potential to do so. (*Id.*). Dr. Duncan's conclusion is that Omega Consulting failed at every opportunity to test for any evidence of disparate impact in the supervisory test. (*Id.*). No attempts were made to split the population into development \ test groups. (*Id.*). No attempts were made to analyze the individual test items once the tests were given to ascertain if there were significant differences in patterns of response for minorities or women. (*Id.*). According to Dr. Duncan, this lack of effort to measure disparate impact is in violation of the EEOC's *Uniform Guidelines*. For example, section 4A of those guidelines state, "Each user should maintain and have available for inspection records or other information which will disclose the impact which its tests and other selection procedures have upon employment

3

opportunities of persons by identifiable race, sex, or ethnic group as set forth in subparagraph B of this section in order to determine compliance with these guidelines." (*Id.*).

Dr. Duncan further notes that while Omega Consulting claims that sample sizes were too small to measure any disparate impact, the fact is that there are a number of tests that could be applied to the data Omega had on hand to ascertain if a gross impact was present. (*Id.*). *Principles for the Validation and Use of Personnel Selection Procedures* states "An approach to examining measurement bias in the domain of multi-item tests is to perform a differential item functioning (DIF) analysis," (p. 33) which, "refers to analyses that identify items for which members of different subgroups with identical total test scores (or identical estimated true scores in item response theory [IRT] models) have differing item performance." (p. 34). (*Id.*).

Further, Omega Consulting precluded the possibility of some measurement procedures by not even attempting to measure the possibility of differing item performance among protected groups. (*Id.*). Dr. Duncan concludes from her analysis that the claims made by Omega Consulting regarding disparate impact measurement are not supportable since Omega made no effort to measure disparate impact or to design procedures that would allow them to do so. (*Id.*).

Thus, contrary to Defendant's claims, evidence exists that substantial flaws in Defendant's testing procedures not only violate the EEOC's guidlelines, but may also result in an adverse impact on African-American and female applicants for supervisory positions.

### Griffin Has Standing to Challenge the Selection Procedures

Defendant next claims that because Griffin passed the Hogan Assessment he has no standing to challenge either testing procedure. This contention ignores two undisputed facts: (1) the testing procedures are used in conjunction with one another; and, (2) Griffin failed the structured interview and was thereby rendered ineligible for promotion.

Defendant's contention is much like arguing that because only half the questions on a test had an adverse impact on test takers, the test takers are barred from legally challenging any of the questions. Such a proposition is absurd on its face. Even if the Court were to countenance Defendant's argument, it should not prevent Griffin from serving as class representative for purposes of challenging the Structured Interview testing procedure, which he undisputedly failed and which rendered him ineligible for promotion.

Accordingly, Griffin has standing to challenge these testing procedures.[1]

### Griffin Has Adequately Defined the Proposed Class

Defendant professes confusion over the class definition. (See, Defendant's Memorandum, pp. 15-17). The class definition utilized in the Amended Complaint and Plaintiff's Memorandum in Support of Class Certification are essentially the same, except that the Memorandum refines the class definition further to make clear that Plaintiff is challenging the "Hogan Assessment Test" and the "Structured Panel Interview" tests only. (Compare, Amended Compl. ¶ 9, with Plaintiff's Memorandum, pp. 1-2). Unfortunately, in drafting the Motion for Class Certification, counsel inadvertently incorporated a class definition used in other litigation. That mistake was unintended and counsel apologizes for any resulting confusion.

In the interests of clarity, however, Plaintiff has this day filed an Amended Motion for Class Certification. The Class definition contained in that motion is essentially the same as that contained in the Amended Complaint and Plaintiff's Memorandum, except that it attempts to make clear that it is challenging the use of the "Hogan Assessment Test" and the "Structured Panel Interview" tests prospectively as well as retroactively. While Plaintiff's counsel believed

---

[1] In the unlikely event the Court deems Griffin inadequate to serve as Class Representative for purposes of challenging the Hogan Assessment, plaintiff's counsel requests the opportunity and a reasonable period of time to identify and substitute an adequate class representative. *Birmingham Steel Corp. v. TVA*, 353 F.3d 1331, 1340 (11th Cir. 2003).

5

that use of the phrase "…the opportunity for such positions…" in the original definition made clear his desire to challenge use of the tests prospectively, the amended class definition makes clear that objective.[2]

Because Griffin has clearly identified the class he is requesting the Court to certify, class certification may not be denied on this basis.

### Joinder is Impracticable

Defendant next argues that Plaintiff's proposed class fails to meet the numerosity requirement of Rule 23(a)(1) because, it contends, at most the class is made up of only 9 members. (Defendant's Memorandum, p. 19).

As an initial matter, it bears reminding that in order to meet the Rule 23(a) numerosity requirement, a party does not need to calculate precisely the number of class members. The Third Circuit has affirmed that "no geographical or numerical limit [is] expressed by Rule 23(a)(1) itself, nor is it necessary that the class representatives have precise knowledge of the exact number of members for determining that joinder is impracticable. It suffices that it be readily apparent . . . that the size of the class makes joinder impracticable." *In re Asbestos School Litigation*, 104 F.R.D. 422, 428 (E.D. Pa. 1984), *aff'd in relevant part and rev'd in part*, 789 F.2d 996 (3d Cir.), *cert. denied sub nom. Celotex Corp. v. School Dist. of Lancaster*, 479 U.S. 852, *cert. denied sub nom. National Gypsum Co. v. School Dist. of Lancaster*, (1986)(citations omitted).

---

[2] The amended class definition is as follows: African American employees of the Alabama Gas Corporation who within the last two (2) years were denied job promotions or who in the future will be denied the opportunity for such promotions to non-bargaining unit positions and salary increases on account of race, regardless of whether such employees are salaried, hourly, union or non-union workers, as a result of the "Hogan Assessment Test" or the "Structured Panel Interview."

6

Secondly, the Defendant's contention that the class is limited to 9 members relies upon an overly strict interpretation of the class definition, which does not account for the number of candidates who will be required to sit for the tests prospectively. In addition, as discovery has just begun, Plaintiff has had no opportunity to test Defendant's representations regarding the size of the class, though discovery directed at this issue has been propounded and will presumably be responded to in due course. Likewise, Defendant is notably silent as to the number of persons having been required to sit for the Structured Interview test. Nevertheless, as Defendant concedes, the numerosity requirement of Rule 23(a)(1) may be met with as few as twenty-one class members. (*Id.*) Since January 31, 2005, according to Defendant, 55 people have taken the Hogan Assessment, 10 of whom are African American. As previously noted, discovery in this case is not set to conclude before mid-September 2007, almost a year from now, and a trial date is unlikely until well after that date. Thus, if a similar number of candidates are required to sit for these tests over that period, then depending on the number of vacancies filled, the class will most likely exceed the numerosity requirements.

Because it is "readily apparent . . . that the size of the class makes joinder impracticable", this Court should find that the Plaintiff's class meets the numerosity requirement.

### Griffin Meets the Commonality and Typicality Requirements

Again Defendant seeks a premature ruling on the merits by arguing that Plaintiff is required at this early stage of the proceedings to prove an adverse impact by statistical analysis or other expert testimony in order to meet the commonality and typicality requirements of Rule 23(a). As demonstrated earlier in this Memorandum, that simply is not the law. In the Report of Parties' Planning Meeting, Plaintiff requested that he be allowed until December 20, 2006 to join additional parties and to amend the pleadings. He further requested that he be allowed until June

7

15, 2007 to file his brief and other papers supporting his Motion for Class Certification. Had Plaintiff been allowed such time, no doubt he would have submitted a statistical analysis and other evidentiary support for his claims. However, the Court within its sound discretion did not see fit to grant Plaintiff's request, opting instead to hear and decide issues of class certification, as is its right, on an expedited basis. As such, Plaintiff has not had the opportunity, nor does the law require, that he submit anything more than a submission on the pleadings.[3] (See Plaintiff's Reply Memorandum at pp., 1-4, *supra*).

As indicated in Plaintiff's initial Memorandum, "The threshold of commonality is not high for class certification under Rule 23(a). *Morris v. Transouth Fin. Corp.*, 175 F.R.D. 694, 697 (M.D. Ala. 1997). The commonality requirement of Rule 23(a) may be satisfied even if there are factual discrepancies and even if there are individual differences as to damages, *Taylor v. Flagstar Bank*, 181 F.R.D. 509, 516 (M.D. Ala. 1998). *See also Groover v. Michelin North America, Inc.*, 187 F.R.D. 662 (M.D. Ala. 1999). Common questions of fact and law are present in this case because the class representative's and all class members' claims arise out of the same practice: namely, AGC's centralized, subjective personnel practice of using the Hogan Assessment and Structured Interview tests to adversely impact African-American employees' opportunities for promotions, wage and benefit increases, and other emoluments of employment. Rule 23(a) requires only that common questions exist, not that they predominate: "there are questions of law or fact common to the class." *Fed.R.Civ.P.* 23(a)(2). Differences that may exist among class members as to damages do not preclude class certification. *Taylor*, 181 F.R.D. at

---

[3] Significantly, as Dr. Duncan's affidavit bears out, Defendant has failed to establish the testing procedures employed by it do not have an adverse impact on the plaintiff class although the means and time to do so are by its admission well within its control.

516. Furthermore, because the Plaintiff seeks predominantly injunctive relief in this case, differences as to damages do not preclude class certification.

In addition to commonality, Rule 23(a) requires that the class representative's claims be typical of the class members' claims. "To establish typicality, there must be a nexus between the class representative's claims or defenses and the common questions of fact or law which unite the class." *Groover v. Michelin North America, Inc.*, 187 F.R.D. 662, 668 (M.D. Ala. 1999)(citing *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332 (11th Cir. 1984). This connection between class representative's claims and a common question "is established if the claims or defenses of the class and the class representatives arise from the same event or pattern or practice and are based on the same legal theory." 187 F.R.D. at 668.

This case meets the typicality requirement because Griffin's claims arise from the same practice: that is, AGC's centralized subjective employment practices, which utilize the Hogan assessment and structured interview tests to adversely impact African-American employees' opportunities on the basis of race. Moreover, the legal theories with which Griffin challenges the practices are based on the same legal theories (violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C § 2000(e) et seq.,) as the claims of all class members. "As with commonality, differences in damages are not enough to deny typicality." 187 F.R.D. at 668 (citing *Kornberg*, 741 F.2d at 1337).

Because the commonality and typicality requirements are met, this matter should be certified as a class action.

### The Class Representative is Adequate

As anticipated, Defendant argues in its response that Griffin is inadequate as class representative.

9

The adequacy of representation required by Rule 23(a) turns on whether the class representative has conflicts of interest with the class members and whether the class representative has retained competent counsel. *Griffin v. Carlin,* 755 F.2d 1516, 1533 (11th Cir. 1985). In this case, competent class counsel is undisputed. Instead, Defendant argues that the class representative has a conflict of interest with class members. Griffin was deprived of his rights by AGC's pattern and practice of race discrimination. As a remedy, he seeks an injunction requiring AGC to cease its policy of race discrimination. Griffin seeks, incidental to that injunctive relief, equitable restitution in the form of back-pay and front-pay, for himself and all other class members. Contrary to Defendant's Memorandum at pp. 25-6, Griffin does not seek compensatory or punitive damages on behalf of the class, so manageability issues relating to the damage claims do not predominate over class issues. *See Allison v. Citgo Petroleum Corp*, 151 F.3d 402 (5th Cir 1998). Although he seeks additional damages pursuant to his individual Title VII claim, his decision not to seek compensatory and punitive damages on behalf of the class will not create conflicts of interest within the class, because those persons seeking additional damages can do so by pursuing their claims individually. *Cooper v. Federal Reserve Bank of Richmond*, 467 U.S. 867, 104 S.Ct. 2794, 81 L.Ed.2d 718 (1984)(*res judicata* did not serve to bar a putative class member from subsequently proving individual acts of discrimination); *c.f. Zachery v. Texaco Exploration and Production, Inc.*, 185 F.R.D. 230, 242-4 (W.D. Tex. 1999).

As stated in Plaintiff's initial Memorandum, even if the Court were to find that Griffin's decision to seek equitable relief on behalf of the class could conceivably create a conflict affecting his adequacy as class representative, the Court can remedy this conflict and protect the due process rights of putative class members by providing class members notice and the opportunity to opt out. The court in *Allison* addressed this precise issue:

> The plaintiffs are apprehensive that such a holding will preclude (6)(2) class actions in civil rights cases. They suggest that class representatives may no longer be adequate under 23(a)(4) because they would not be able to seek for the class the full (monetary) recovery otherwise available to its members on an individual basis. In the first place, we are not certain that an adequacy of representation problem would exist under these circumstances. But, even if it would, this concern might well be addressed, it seems to us, though the notice and opt-out mechanisms under Rule 23(d), see e.q. *Penson*, 634 F.2d at 994; *Eubanks*, 110 F.3d at 93, 96, provided the other criteria for class certification have been met. Those members of the putative class who ultimately did not wish to participate in the class action could simply opt out. Indeed, we have long-required notice in (b)(2) class actions in which equitable monetary claims are at stake. *See Johnson*, 598 F.2d at 438. By providing (b)(2) class members with the procedural guards of notice and opt-out, the district court can permit civil rights class actions to proceed under 23(b)(2) without requiring of 23(b)(3), yet still ensure that the class representatives adequately represent the interests of the unnamed class members.

*Allison*, at 418 fn. 13. Notably, Defendant fails to even address this proposed resolution, thereby conceding its viability. Alternatively, the Court could afford Plaintiff's counsel a fair opportunity and a reasonable period of time to identify and substitute an adequate class representative. *Birmingham Steel Corp. v. TVA*, 353 F.3d 1331, 1340 (11th Cir. 2003).

### The Defendant Has Acted or Refused to Act Generally Toward the Class Making Injunctive and Declaratory Relief Appropriate

As stated in Plaintiff's initial Memorandum, the conduct at the heart of this action is AGC's pattern and practice of unlawful discrimination in employment on the basis of race, specifically by utilizing the Hogan Assessment and Structured Interview tests to adversely impact African-American applicants for first-line supervisory positions. By denying African-Americans opportunities for promotion and depriving them the wages and benefits of employment that it grants to similarly or less qualified Caucasians, AGC has harmed and will continue to harm the entire class of African-Americans who are or were or will be employed by AGC and required to take these tests prior to being considered eligible for promotion. This group of African-Americans, who are being denied opportunities and deprived of wages and

benefits by AGC's unlawful discrimination, is the class whom Griffin seeks to represent, and it is toward this class as a whole that AGC has acted or refused to act. Injunctive and declaratory relief are appropriate in this case because AGC's unlawful discrimination affects the class as a whole. An injunction from this Court will provide the necessary relief, and so this action should be certified as a class action under Rule 23(b)(2).

Defendant erroneously argues that Plaintiff seeks compensatory and punitive damages for the class, and that therefore, questions of individualized damages predominate. Defendant is simply wrong. Plaintiff made clear in his initial brief and again makes clear in this brief that he pursues no claim for compensatory or punitive damages on behalf of the class. As such, back-pay damages are incidental and this Court can properly certify this class pursuant to Rule 23(b)(2).

## CONCLUSION

As indicated in our initial filing, even if there are doubts about class certification, the class should be certified because Rule 23(c) allows for decertification. "Doubts regarding the propriety of class certification should be resolved in favor of certification." *Groover,* 187 F.R.D. at 670 (*citing Buford v. H & R Block, Inc.*, 168 F.R.D. 340, 346 (S.D. Ga. 1996), *aff'd* 117 F.3d 1433 (11th Cir. 1997)). This action and the proposed class meet all the requirements of Rules 23(a) and 23(b)(2), but even if there were some doubt about the propriety of class certification, the class should be certified because "the flexibility afforded by conditional certification 'enhances the usefulness of the class action device' so as to ensure the trial court that 'actual, not presumed, conformity with Rule 23(a)' exists." *Groover,* 187 F.R.D. at 670 (*citing General Tel. Co. of the Southwest v. Falcon,* 457 U.S. 147, 160, 102 S. Ct. 2364, 2372, 72 L. Ed. 2d 740 (1982)).

For the foregoing reasons, Plaintiff's Motion for Class Certification is due to be granted.

Respectfully submitted,

/s/ Andrew C. Allen
ANDREW C. ALLEN

**OF COUNSEL:**
Joe R. Whatley, Jr.
WHATLEY DRAKE & KALLAS, LLC
2323 2nd Avenue North (35203)
Post Office Box 10647
Birmingham, Alabama 35202-0647
Telephone: (205) 328-9576
Facsimile: (205) 328-9669

J.L. Chestnut, Jr.
CHESTNUT, SANDERS, SANDERS
PETTAWAY & CAMPBELL, PC
Post Office Box 1290
Selma, Alabama 36702-1290
Telephone: (334) 875-9264
Facsimile: (334) 875-9853

## CERTIFICATE OF SERVICE

I hereby certify that on this the 10th day of October, 2006, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Abdul K. Kallon
James Walker May, Jr.
BRADLEY ARANT ROSE & WHITE, LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama 35203-2104
Email: akallon@bradleyarant.com
jmay@bradleyarant.com
Telephone: (205) 521-8294
Facsimile: (205) 488-6294

/s/ Andrew C. Allen
OF COUNSEL

13