## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## MONTGOMERY DIVISION

| | | |
|---|---|---|
| **JEROME W. GRIFFIN, for himself and all others similarly situated,** | ) ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) ) | **CIVIL ACTION NO. 2:06-cv-365-MEF** |
| **ALABAMA GAS CORPORATION,** | ) ) ) | |
| **Defendant.** | ) | |

### ALABAMA GAS'S RESPONSE TO PLAINTIFF'S SUPPLEMENT TO PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF THE AMENDED MOTION FOR CLASS CERTIFICATION

In response to Plaintiff's supplemental submission, as a threshold matter, Alabama Gas points out again that Plaintiff has failed to present any evidence to support his contention that Alabama Gas's selection procedures disparately impact African Americans.  Plaintiff has the burden of establishing that he can satisfy Rule 23's requirements. He cannot do so with bare and unsubstantiated allegations of class-wide discrimination. This failure to present any evidence to substantiate his disparate impact claim is fatal to his effort to obtain class certification. Moreover, his Motion fails also because, as shown below and in Alabama Gas's main opposition brief (Doc. # 18), he cannot show that he has standing to represent

the class, that the class is so numerous that joinder is impracticable, or that his interests do not conflict with those of the class he seeks to represent.

1.    Class Definition

Alabama Gas acknowledges that the class definition Plaintiff sets out in the supplemental response is identical to the one in the Amended Motion for Class Certification (Doc. #22).  As Alabama Gas understands this definition, Plaintiff seeks to represent all African American employees who were or will be denied promotions because of the Hogan Personality Inventory ("HPI") or the structured interview.    For the reasons stated below and in Alabama Gas's opposition to the Motion for Class Certification, the Motion is due to be denied.

2.    Practicability of Joinder

Plaintiff cannot show that the class he seeks to represent is so numerous that joinder of all members is impracticable. Although Plaintiff attacks Alabama Gas's assertion that the class only numbers 9, he does not present any contrary numbers. Rather, Plaintiff's numerosity argument is premised entirely on his view that at some undetermined point in the future, because of anticipated promotion opportunities, he will satisfy the numerosity requirements: "the Defendant's allegation that the class is limited to only 9 members not only does not account for the number of applicants who have been subjected to these tests over the course of the past 10 months since Defendant's Memo was filed, but also does not account

for the number of candidates who will be required to sit for these tests in the

future." Doc. #38, p. 2.   Rather than present any estimates of the size of the

proposed class, Plaintiff attacks Alabama Gas's numbers instead as being

purportedly erroneous because Alabama Gas has not updated them or factored in

future applicants. [1]  Essentially, Plaintiff ignores legal precedent and contends that

Alabama Gas has the burden of showing that he cannot satisfy the numerosity

requirement.   To the contrary, "[t]he advocate of the class – the plaintiff here –

bears the burden to establish the propriety of . . . class certification." *Vega v. T-*

*Mobile USA, Inc.,* 2007 WL 1364333, *1 (S.D.Fla. May 8, 2007).

---

[1] Although Alabama Gas does not have the burden of quantifying the class size, Alabama Gas notes that since its October 2006 submission, it has posted 8 supervisory positions for which it utilized the HPI and structured interviews: (1) Field Supervisor – Construction December 11, 2006; (2) Field Supervisor I & O December 11, 2006; (3) Operations Supervisor – Gadsden June 11, 2007; (4) Operations Supervisor – Montgomery July 25, 2007; (5)Operations Supervisor – Selma, which it decided not to fill; (6) Operations Supervisor – Anniston July 30, 2007; (7) Field Supervisor – Construction July 23, 2007; and (8) Field Supervisor – I & O July 23, 2007.  Affidavit of Denise Moye ("Moye Aff.), ¶ 3 (attached hereto as Exhibit 1).  14 African Americans applied for these positions and the breakdown is as follows: (1) Robert Blevins and Jerry Crawford applied for the Field Supervisor – Construction job. Both passed the HPI and structured interview and Blevins received the position on December 11, 2006; (2) Juanita Austin for the Field Supervisor – I & O position. She did not have to take the HPI or structured interview since she had previously successfully completed both. She was however ineligible for consideration because of performance infractions; (3) David Higgins for the Operations Supervisor – Gadsden position. He passed the HPI but failed the structured; (4) Evon Moss for the Operations Supervisor – Montgomery position. She failed the HPI; (5) Ralph Brooks, Greg Chestnut, Thomas Ferguson and Plaintiff applied for the Operations Supervisor Selma position. Plaintiff did not have to take the HPI since he had successfully completed it. Ferguson was ineligible for promotion consideration because of performance issues. Brooks failed the HPI. Chestnut passed the HPI and, like Plaintiff, failed the structured interview; (6) Howard Jackson, Edna Richardson and George Watson  for the Operations Supervisor – Anniston position. Jackson and Richardson failed the HPI. Watson passed the HPI but was unsuccessful on the structured interview; and (7) Sylvester Cannon and Jerald Thornton for the Field Supervisor – Construction position. Cannon did not have to take the HPI since he had already passed it. Thornton passed the HPI but not the structured interview.  Moye Aff., ¶¶ 2 & 3. No African Americans applied for the July 23, 2007 Field Supervisor – I & O position. *Id.*  Of the 14 who applied for these 8 positions, five were included in the earlier count of 10 HPI takers: Plaintiff, Blevins, Austin, Cannon and Watson., (Donaldson Aff. (Doc. # 19), ¶ 7), and, as such, do not count as new class members. Moreover, Ferguson never took the HPI because he was ineligible because of his performance infractions.  Therefore, the class size has only increased by 8, bringing the total to 17 – which is still well below the numerosity threshold.   Furthermore, four (Crawford, Higgins, Chestnut, and Thornton) of the eight new members of the class passed the HPI and, arguably, like Plaintiff, lack standing to challenge the HPI.

To discharge this burden, Plaintiff is "not required to allege the exact number of class members to achieve certification. However, to meet the burden of numerosity, the class proponent must proffer evidence of the number of members in the purported class or a reasonable estimate of that number . . ." *Grillasca v. Hess Corp.*, 2007 WL 2121726, *9 (M.D. Fla. July 24, 2007). Mere estimates are insufficient; rather the estimate of the proposed class must be reasonable. *Id.* "Absent sufficient evidence and explanation to substantiate plaintiffs' estimation, this Court must decline to certify a class." *Id.*

Here, Plaintiff failed to present any reasonable estimate of the size of the proposed class. Instead, he contends only that "the numerosity requirement can easily be met by properly including the potential applicant pool consisting of African American employees . . . who may apply for a supervisory position in the future . . ." Doc. # 38, p. 3. Plaintiff then cites *Kilgo v. Bowman Transportation, Inc.*, 789 F.2d 859 (11th Cir. 1986), for the contention that numerosity is satisfied when the class includes "future and deterred job applicants, which of necessity cannot be identified." *Id.* Plaintiff conveniently overlooks that the *Kilgo* Court preceded this comment with the finding that the *Kilgo* plaintiffs had "identified at least thirty-one individual class members." *Kilgo*, 789 F.2d at 878. In other words, even excluding future applicants, the *Kilgo* plaintiffs exceeded the minimum class size requirement: "While there is no fixed numerosity rule,

4

generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors." *Cox v. American Cast Iron Pipe Co.,* 784 F.2d 1546, 1553 (11th Cir. 1985).  Thus, *Kilgo* does not hold that a class that numbers less than 21 can rely on future applicants to satisfy the numerosity requirement.  If this was the case, then all cases will qualify for class status since a plaintiff can always contend that he will eventually satisfy numerosity.

Moreover, Plaintiff overlooks also that the *Kilgo* Court certified the class, in part, because it found joinder impracticable due to geography.  *Id.*  Specifically, according to the court, "practicability of joinder depends on many factors, including, for example, the size of the class, ease of identifying its numbers and determining their address, facility of making service on them if joined and their geographic dispersion."  *Id.*  (citations omitted).  The Court then found joinder impracticable because "the certified class also includes applicants from a wide geographical area."  *Id.*

Here, these factors militate in favor of joinder, rather than class certification. The potential universe is limited to African American employees of Alabama Gas who apply for promotions to supervisory jobs that use the HPI and structured interview as a selection criteria. As Alabama Gas showed in its October submission, only 10 African Americans applied for the eight positions that it filled

using the selection criteria Plaintiff challenges.[2]  Donaldson Aff. (Doc. # 19), ¶ 7.
Moreover, since 8 of the 10 passed the HPI, in actuality only 2 have standing to
challenge the HPI.[3]   However, even if this Court considers all 10 and also
considers the eight new applicants and any future applicants, the group is still one
that is easily identifiable. Unlike applicants for initial employment, applicants for
promotions are incumbent employees that the employer can easily identify.
Moreover, since Alabama Gas's operations are in Alabama, by extension the
applicants will also all be in Alabama.  Therefore, unlike the *Kilgo* plaintiffs who
spanned multiple states, any person here who feels disparately impacted by the
selection procedures can easily be joined as party plaintiffs in this lawsuit.
Because "the core of the numerosity requirement is practicability of joinder, not
number of interested persons per se", *Jones v. Roy*, 202 F.R.D. 658, 666 (M.D.
Ala. 2001) (DeMent, J.), that the potential class members here are easily
identifiable and can then be joined as party plaintiffs is fatal to Plaintiff's
numerosity burden.

---

[2] If the Court includes the eight positions filled in the interim, then the numbers increase to 18 African American applicants for 16 positions.

[3] Plaintiff contends that Alabama Gas incorrectly counted the potential class members by limiting the count only to those who took the HPI:  "The defendants erroneously calculate the number of class members according to the number of African-Americans who took the HPI.  Not only do they not account for the number of persons who have been required to sit for the structured interview test . . ."  Alabama Gas used the HPI numbers because that is the first test employees must successfully complete. Donaldson Aff. (Doc. # 19), ¶¶ 8-9.  Employees only advance to the structured interview if they successfully pass the HPI. *Id.*  In other words, counting the employees who advance to the structured interview, as Plaintiff suggests, would be duplicative.  Furthermore, since not all employees pass the HPI, there will always be a higher count with the HPI than with the structured interviews.  Finally, Alabama Gas notes that, technically, since Plaintiff alleges that the testing procedures are "flawed", Doc. 398, p.3, the better count is one that is restricted to only those employees who were adversely impacted by the HPI's alleged flawed procedures.  This, of course, would yield a count lower than the 9 Alabama Gas arrived at when it used the number of the individuals who actually took the HPI.

Finally, joinder, as opposed to class certification, is also proper because of judicial economy. As Judge DeMent ruled:

> The court also weighs the fact that class actions impose added burdens upon the judiciary, which must constantly scrutinize the proceedings and insure that the absent members are receiving everything to which they are entitled. When a court looks at certification motions in the context of a 21-to-40-member class, one factor to consider is how close the proposed class is to the number 21. The court takes judicial notice that civil actions involving as many as 30 plaintiffs have been prosecuted in the District without a hitch. The court finds that joinder is preferable to the class device in this case. A class action is not the superior way for this case to proceed.

*Jones v. Roy*, 202 F.R.D. at 666 (citations omitted). This is precisely a case where joinder is preferable to the class action. Accordingly, Plaintiff's Motion is due to be denied.

3.    <u>Plaintiff lacks standing to represent the HPI subclass</u>

Plaintiff lacks standing to represent a class of individuals denied promotions because of the HPI since he successfully completed the HPI on his first attempt. Plaintiff disagrees and asserts that he can still represent such a subclass and relies on *Wooden v. Board of Regents*, 247 F.3d 1262 (11th Cir. 2001), to support his position. Plaintiff's reliance on *Wooden* is misplaced. *Wooden* is an equal protection case in which the University of Georgia ("UGA") admitted it used race as a factor in its admission selection decisions. 247 F.3d at 1265-1267. UGA argued, however, that despite the use of race, one of the plaintiffs lacked standing

to raise a claim since UGA would have denied him admission even without the impermissible racial criteria.  *Id.* at 1270, 1278-79. The 11th Circuit rejected this argument and found that the plaintiff had standing since UGA, in fact, evaluated him based on the impermissible racial criteria. *Id.* at 1279-1280.

Here, unlike UGA, Alabama Gas subjects <u>all</u> applicants for Operations supervisor positions to the same selection criteria, *i.e.,* first the HPI and if the candidate is successful, then the structured interview.  Indeed, as Alabama Gas pointed out in its opposition to Plaintiff's Motion for Class Certification, of the 55 employees who had taken the HPI at the time Alabama Gas submitted its October 3, 2006, response (Doc. #18), only 10 were African American.  Randy Donaldson Aff. (Doc. #19), ¶ 7.  Eight of these 10 (80%), including Plaintiff, passed the HPI. *Id.*  In contrast, 29 of 45 whites passed, *id.*, for a success percentage of 64.44%. Thus, not only are the selection requirements the same for <u>all</u> applicants, but also African Americans have a higher success rate on the HPI than whites.  Needless to say, this is hardly a case where "the injury in fact in an equal protection case of this variety is the denial of equal treatment resulting from the imposition of the barrier."  *Wooden*, 247 F.3d at 1280 (quotations and citations omitted). Accordingly, Plaintiff's reliance on *Wooden* misses the mark completely.

Moreover, *Wooden* actually supports Alabama Gas's contention that Plaintiff lacks standing to represent the class since he passed the HPI. As the court stated:

> Thus, it is well-settled that prior to the certification of a class, and technically speaking before undertaking any formal typicality or commonality review, the district court must determine that at least one named class representative has Article III standing to raise <u>each</u> class subclaim . . . It is not enough that a named plaintiff can establish a case or controversy between himself and the defendant by virtue of having standing as to one of many claims he wishes to assert. <u>Rather, each claim must be analyzed separately and a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim.</u>

<u>Wooden</u>, 247 F.3d at 1288 (citations and quotations omitted and emphasis added).

Here, Plaintiff seeks to represent a class of employees who "were denied job promotions or who in the future will be denied . . as a result of the 'Hogan Assessment Test' or the 'Structured Panel Interview.'" Doc. 38, p. 1. Plaintiff contends that both of these selection components have a disparate impact on African Americans. To summarize again, Alabama Gas requires supervisory applicants to first take the HPI, which Plaintiff refers to as the Hogan Assessment Test. Donaldson Aff. (Doc. # 19), ¶¶ 8-9. Applicants <u>only</u> advance to the structured interview phase <u>if</u> they pass the HPI. *Id.* at ¶ 9. Moreover, once an employee successfully completes the HPI, even if she is unsuccessful in the structured interview phase, she never has to retake the HPI. *Id*. at ¶ 8.

It is undisputed that Plaintiff passed the HPI on his first attempt. *Id.* at ¶7. It is also undisputed that 8 of the 10 African Americans who sat for the HPI passed it. *Id.* This success rate belies Plaintiff's assertion that the HPI "disparately impacts the promotional opportunities of African-American applicants." Doc. 38, p. 4. However, even if it did, because Plaintiff passed it, he has not "suffered the injury that gives rise to that claim." *Wooden*, 247 F.3d at 1288. Because "each claim must be analyzed separately", *id.,* Plaintiff has no standing to challenge the HPI. Accordingly, his Motion is due to be denied.

4.    <u>Individual request for compensatory and punitive damages v. class injunctive relief</u>

As a threshold matter, it seems that Plaintiff has abandoned the class claim for compensatory and punitive damages he asserted in the Amended Complaint. *See* Doc. 13, p. 8, ¶¶ 3 and 5. As Alabama Gas pointed out, since such claims are highly individualized, they are inappropriate for class treatment. *See* Doc. #18, pp. 26-28. In any event, even if Plaintiff is now only seeking compensatory and punitive damages for himself, this fact alone is fatal to the class certification he seeks. The law is clear that a plaintiff who seeks individual remedies that are not available to the class is not an adequate class representative:

> <u>Appellees are still pursuing remedies for themselves they are not seeking for the class; that is a conflict.</u> As just one example of the potential conflict, [plaintiffs] could be influenced by their desire to maximize their individual gains in any negotiations for a class settlement. As representatives of a class, <u>Appellees need</u>

10

> to protect the interests of the class first and foremost; we cannot say Appellees possess the same interest in the litigation as the class.
>
> Appellees may pursue their individual claims for compensatory and punitive damages, or they may pursue the class claims.

*Drayton v. Western Auto Supply Co.*, 2002 WL 32508918, * 6 (11th Cir. 2002) (emphasis added); *see also  Cooper v. Southern Company*, 390 F.3d 695, 721 (11th Cir. 2004).

Plaintiff attempts to overcome this inherent conflict in two ways.  First, he contends that his "individual claim for disparate treatment is based on specific conduct directed toward him by Alabama Gas that goes beyond the use of selection procedures that have a disparate impact."  Doc. # 38, p. 6.  However, a cursory review of the Amended Complaint (Doc. #13) belies this assertion.  Indeed, Plaintiff's individual claims are intertwined with the proposed class and arise from the same allegedly biased selection procedures.  Doc. #13, ¶¶ 10-18.  In a nutshell, like the class he seeks to represent, Plaintiff contends that Alabama Gas has denied him promotions because of the same "selection procedures that [purportedly] have a disparate impact" on the proposed class.  Doc. #38, p. 6.  When, as here, Plaintiff challenges the same selection criteria he contends disparately impacts African Americans, he cannot seek additional relief for himself by contending that his claims differ from those of the class.

Next, Plaintiff contends that he is not precluding the class from seeking compensatory and punitive damages because "individual class members are free to maintain separate actions under a claim for disparate treatment if they so choose." Doc. 38, p. 7. To support this contention, Plaintiff relies on *Cooper v. Federal Reserve Bank of Richmond*, 467 U.S. 867 (1984). Reliance on *Cooper*, a class certified <u>both</u> under Rules (b)(2) and (3), misses the mark however. In *Cooper*, the district court reached a decision on the merits and specifically found that the "Bank had engaged in a pattern and practice of racial discrimination with respect to employees in certain specified pay grades but not with respect to employees above those grades." 467 U.S. at 867. When a group of employees in the pay grades in which the court found no discrimination sought to intervene, the court denied their intervention because "they were employed in jobs above the specified grades for which recovery would be granted." *Id*. Those employees then filed individual claims, which the Fourth Circuit dismissed on *res judicata* grounds. The Supreme Court reversed and held that the plaintiffs could pursue their individual claims because the district court's adverse finding on the pattern and practice class claims for their pay grades did not have a preclusive effect on their individual claims, which the district court had not adjudicated. *Id*. at 880.

Contrary to Plaintiff's contention, *Cooper* does not hold that class members in a Rule 23(b)(2) class, who are awarded injunctive relief and backpay, can

12

subsequently file individual claims to obtain compensatory and punitive damages for the very same conduct. By its very nature, a (b)(2) class is mandatory and has no "opt out" provision for individuals who want to pursue their own claim for monetary damages. Consequently, if this Court certifies a class and determines subsequently that the testing procedures Plaintiff challenges do, in fact, have an adverse impact on the class, the class members would be bound by the injunctive relief or incidental relief, if any, this Court awards. They would not be able, as Plaintiff suggests, to file a separate action at that juncture to obtain the compensatory and punitive damages Plaintiff has disavowed for them.

This restriction on monetary damages casts doubt on whether Plaintiff can adequately represent the class. As the 11th Circuit recognized in *Cooper v. Southern Company*, 390 F.3d at 721, "to many members of the class (and especially those who no longer work for the defendant[]), the monetary damages [Plaintiff] requested [in the Amended Complaint] might be of far greater significance than [the] injunctive relief" Plaintiff now claims he is only seeking for the class. Because Plaintiff seeks to pursue these monetary damages for himself while foreclosing the proposed class from potential access to the same monetary relief, this clearly puts his interests in conflict with those of the class. In light of this conflict, Plaintiff is not a proper representative and cannot adequately represent the interests of the class.

Conclusion

As shown here and in the Memorandum in Opposition to Plaintiff's Motion for Class Certification (Doc. #18), Plaintiff fails to discharge his burden of showing that class action treatment is warranted in this case. Among other things, he cannot overcome that he lacks standing to represent a class consisting of persons whom the HPI purportedly disparately impacted nor can he show that joinder is impracticable. Accordingly, the Motion for Class Certification fails.

Respectfully submitted,


s/Abdul K. Kallon
One of the Attorneys for
Alabama Gas Corporation
Bradley Arant Rose & White LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203-2104
(205) 521-8000

14

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 15th, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Joe R. Whatley, Jr.
Andrew C. Allen
Whatley Drake & Kallas, LLC
Post Office Box 10647
Birmingham, AL 35202-0647

J. L. Chestnut, Jr.
Chestnut Sanders Sanders Pettaway & Campbell PC
PO Box 1290
Selma, AL 36702-1290

and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

None.

Respectfully submitted,
s/ Abdul K. Kallon
Abdul K. Kallon
Bradley Arant Rose & White LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203-2104
Telephone: (205) 521-8000
Facsimile: (205) 521-8800
E-mail: akallon@bradleyarant.com

15